THE PEORIA MARINE AND FIRE INSURANCE COMPANY

*v.*

CHARLES L. FROST et al.

1. REMEDY — *in whose name it must be sought.* When an injury is done to property, the remedy must be sought, in the courts of common law, by some person who has an estate in the property, legal or equitable, which the law recognizes.

2. INSURANCE — *right of insurer.* Where insured property has been burned by the carelessness of a railway company, and the insurance company has paid the loss, it cannot maintain an action in its own name against the railway company. The suit must be brought in the name of the owner of the property for the use of the insurer.

3. SAME. Although a different rule may be applied in cases of marine insurance, it rests upon the doctrine of abandonment, and subrogation of the insurer to the rights and title of the insured, a doctrine which has no existence in cases of fire insurance.

4. NEW TRIAL. Where the action is not maintainable, in any view of the evidence, the judgment will not be reversed because the court directed the jury to find for the defendant, though such instruction was wrong in form.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. M. WILLIAMSON, Judge, presiding.

This was an action on the case brought at the January term, 1864, by the appellants against the appellees. The material facts are stated in the opinion of the court.

Messrs. COOPER & GROVE for plaintiffs in error.

Messrs. INGERSOLL & PUTERBAUGH for defendants in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the court:

The defendants in error, who were also defendants below, were, on the 13th of August, 1863, in possession of, using, and running the Logansport, Peoria & Burlington Railroad. The freight train passing Westward on that day, set fire to the warehouse of Grafft & Webster, situated in Peoria county near the track, and the building, with its contents, was consumed. The locomotive had no screen or guards on its smoke stack, and the fire thrown therefrom ignited the warehouse. Grafft & Webster gave notice of their loss to the insurance company, plaintiff herein, which in its turn notified defendants, informing them that the company would hold them liable, and at the expiration of the time fixed by the policy, paid the loss. The insurance company now brings its action against the defendants, controlling the road, alleging that the fire was caused by the gross carelessness of their servants. It is admitted that if there was such carelessness, they were liable, and the only question made upon this record is, whether this liability can be enforced in the name of the present plaintiff, or whether the suit must be brought in the name of the owners of the property destroyed, for the use of the insurance company.

This question first arose in England in the time of Lord MANSFIELD. An act of Parliament made the Hundred liable for injury to property by rioters. A house having been burned by them, and an insurance company having paid the loss, it brought suit against the Hundred in its own name. The Court of King's Bench held that the action could not be maintained, and the judgment was affirmed in the Exchequer Chamber. *London Assurance Company* v. *Lainsbury,* 3 Doug., 245. The other point arose in another case at the same time. *Mason* v. *Lainsbury,* 3 Doug., 60. In that case the action was brought against the Hundred in the name of the

owner of the property. The Hundred defended on the ground that the insurance company had already paid the loss. The court held that this was no defence — that the Hundred was primarily liable, and that recovery could be had as if the insurance company had not paid. The recovery was for the benefit of the company. This case was followed in *Yates* v. *Whyte*, 4 Bing. N. C., 272, 33 E. C. L., 349.

The same rule has been repeatedly laid down by the most respectable courts of this country. The question was very fully considered in the case of the *Conn. Life Ins. Co.* v. *The N. Y. & N. H. R. R. Co.*, 25 Conn., 265, and although we should be unwilling to adopt all the reasoning of the court, yet the case is a strong authority against the maintenance of this action. The same point was ruled in *Rockingham Mutual Fire Insurance Co.* v. *Barker*, 39 Maine, 253, the court holding that the insurance company could not maintain the action in its own name. The same doctrine is laid down in *Hart* v. *The Western R. R. Co.*, 13 Met., 101.

The only case quoted by the counsel for the plaintiff in error as holding a different rule, and we presume the only case to be found, is *Quebec Fire Insurance Co.* v. *St. Louis*, 1 Lower Canada, 222, and this case is not an authority because decided upon the principles of the law of France.

In the face of this formidable array of authorities, we are urged in the very elaborate argument of the counsel for the plaintiffs in error, to establish for this State, a new rule. If the question were between allowing this suit to be brought, and giving the plaintiff no remedy for an acknowledged though remote wrong, we should be unwilling to refuse the remedy, even though obliged to depart from former precedents. But it is not a question between this remedy and none at all, but between this remedy and another equally efficacious. The rules of procedure at common law, are the results of centuries of experience applied to human affairs by intellects at once comprehensive and acute, and where we find a principle firmly established by a series of decisions beginning with such names as Mansfield and Buller, and followed

by such courts as we have quoted, with not a single adverse decision to break the current of authorities, we should hesitate long before we pronounce the rule arbitrary and unreasonable, and therefore, unworthy to be followed. If courts were to assume the right to overturn an established rule whenever, if the question were a new one, they might be inclined to hold a different principle, the law would cease to be a system and degenerate into a mere matter of judicial discretion. The profession would be unable to advise their clients, and the reproach of uncertainty--which it is so common to cast upon the administration of justice, would be well deserved.

The decisions we have quoted, proceed upon the ground, that when an injury is done to property, the remedy must be sought in the courts of common law, by some person who has an estate in the property, legal or equitable, which the law recognizes. But the insurance company had no estate or ownership in this property of any kind whatever. It had simply contracted with the owners that in the event of the property being destroyed by fire it would pay them a certain sum of money. This, it is true, gave them a certain moral interest, if we may so call it, in the property, in the same way that creditors of Grafft & Webster, if they had any, had a certain moral interest in the preservation of this property, because upon its preservation might depend their power to collect their debt; but surely no one could contend that they may bring a suit against the railroad company for the indirect damages they may have suffered. The law, however, does place the insurance company that has paid the loss on a different footing from creditors, inasmuch as it so far subrogates the insurance company to the rights of the assured, as to allow it to bring a suit against the wrong-doers, but it requires it to be brought in the name of the owners of the property, to whom a direct injury has been done.

But another reason less artificial, may be given for requiring the suit to be so brought. It very often happens that

valuable property is insured in several companies at the same time. If the property is burned through the careless-ness of some third person, can such person be liable to as many suits as there are insurances? Is there more than one cause of action against him? And can that be indefinitely divided? What is the measure of damages? Is it the injury done by him to the property, or the amount the insurance companies have paid? Clearly the former. If the several insurance companies have paid more than the actual loss, they cannot make him liable for what they have paid. He is liable to the owner of the property for the injury he has done to it, and although a wrong-doer, it is still his right to have that loss adjusted in a single suit. The companies may unite in bringing an action for their use in the name of the assured. The recovery will be for the injury done to the property, and when the judgment is obtained, the court will determine, as between the different companies, how the proceeds of the judgment are to be divided.

The counsel for the plaintiff in error quote several cases in which mortgagees, the condition of the mortgage being broken, have been allowed to recover against trespassers for impairing the value of the security. We recognize that as the law, but it does not conflict with the cases above cited. This recovery proceeds upon the ground that the mortgagee has an estate in the mortgaged premises which the law recog-nizes, and will protect. So also in the case of *Marsh* v. *Bil-lings*, 7 Cush., 322, the action was brought by the person to whom the injury was done. No other person had a right of action.

We have said that the counsel for the plaintiff in error had cited no case decided in courts governed by the common law, in which it had been held that the insurance com-pany could maintain the action in its own name. We referred to cases of fire insurance. Counsel cite the case of the *Colum-bus Insurance Co.* v. *Curtenius*, 6 McLean, 209, as an instance of recovery in the name of the company. This question was

not raised in that case. Besides that was a marine insurance, which, in many respects, is governed by different principles from those which control fire insurance. The doctrine of abandonment is not recognized in the latter, while in the former it is familiar, and when it occurs, the title of the property insured at once vests in the underwriters, and it has been said, that the abandonment has, for this purpose, a retroactive effect. If then the right of action, in its own name, belongs to a marine insurance company, in cases of abandonment, it rests upon a doctrine which has no existence in cases of fire insurance.

The counsel for the plaintiff in error contend that we must reverse the judgment because the court below instructed the jury, in terms, that they were to find for the defendant. This instruction was in form objectionable, but inasmuch as, if the jury had found for the plaintiff, we should feel constrained to set the verdict aside, as the court below itself would doubtless have done, we do not deem it proper, on account of the erroneous form of this instruction, to reverse the judgment.

The insurance company will, however, be at liberty to bring a suit in the name of Grafft & Webster, to its use, indemnifying them, if they require it, against the costs, and this suit will be under the control of the company.

*Judgment affirmed.*