Pontiac Mutual County F. & L. Ins. Co. v. Sheibley, 203 Ill. App. 527.

daughter, and another one-third of the par value thereof to his son, and the agreement provided further that it should not be changed or terminated except by the unanimous consent of the signers thereof and should be binding on their heirs, executors, administrators and assigns, *held* that such agreement was not void as against public policy.

2. CORPORATIONS, § 172*—*when contract for pooling of stock is valid.* A valid, irrevocable contract by the owner of corporate stock passing title upon the death of the original owner, based upon a sufficient consideration, and not a testamentary disposition of such property, is created where the three owners of the stock in such corporation enter into a written agreement to vote their respective shares for each other for directors, and no other purposes, and such agreement provides that they shall be elected to specified offices and one of such stockholders agreed that in his absence or on his death a certain other of the parties to the agreement should have the voting of the stock standing in his name and that on his death the dividends on the shares should be paid to the other party, as well as one-third of the par value of the stock and another one-third of the par value thereof to his son, and the agreement further provides that it should not be changed or terminated except by the unanimous consent of the signers thereof, and should be binding on their heirs, executors, administrators and assigns.

3. PROPERTY, § 2*—*what is.* Property is strictly speaking that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or objects.

---

# Pontiac Mutual County Fire & Lightning Insurance Company, Appellee, v. W. M. Sheibley, Appellant.

## Gen. No. 6,272.

1. INSURANCE, § 518*—*what is extent of recovery where compensation received from wrongdoer causing loss.* A contract of insurance is for indemnity, and if the insured receives satisfaction or part satisfaction for his loss from a wrongdoer who caused it, the amount so received should be applied in full or partial discharge of the policy.

2. INSURANCE, § 520*—*when insurer is entitled to subrogation.* If an insured fire loss is not satisfied by the wrongdoer causing

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

it and the insurer pays the loss, he is entitled to equitable subrogation to the claim of the insured against such wrongdoer to the extent the insurer has paid.

3. INSURANCE, § 522*—*what is right of insurer as to action against wrongdoer causing loss.* An insurer paying a loss cannot bring an action in his own name against the wrongdoer causing the loss, but has an enforceable right to participate in an action brought by the insured.

4. INSURANCE—*what are rights of insured upon compromising of judgment against wrongdoer causing loss.* Where an insured recovers a judgment against a wrongdoer who caused the loss which was insured, he cannot compromise such judgment without consent of the insurer without incurring liability to the insurer to the amount paid by the latter, but where the insured compromises such judgment with the insurer's consent on condition that he pay the insurer a certain portion of the insurer's claim, the insured is bound by such terms.

5. APPEAL AND ERROR, § 864*—*when court will not examine record for matters not abstracted.* Reviewing courts will not examine the record for matters not abstracted to find some reason for reversing a judgment.

Appeal from the Circuit Court of Livingston county; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed October 12, 1916.

ARTHUR H. SHAY, for appellant.

BERT W. ADSIT, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

A barn and other buildings and property belonging to appellant, W. M. Sheibley, were destroyed by fire claimed to have been set by the Chicago & Alton Railroad Company. The barn was insured for $800 by appellee, County Fire Insurance Company. Appellant collected the amount of his policy from appellee, and at about the same time presented a claim against the railroad company for the entire loss. Appellee, by agreement with appellant and on his statement that it was interested in the claim against the railroad com-

pany to the extent of $800, employed counsel and actively assisted in the prosecution of a suit against the railroad, which resulted in a verdict and judgment of $4,000 for appellant, that amount presumably being what the jury found was the total loss of property occasioned by the fire. The railroad company moved for a new trial, which was successfully resisted by appellant. It obtained orders for an appeal to this court and filed its appeal bond, then suggested a settlement with appellant. Negotiations for a settlement were participated in by appellant, appellee and the railroad company, and afterwards appellant accepted $3,000 in compromise of the judgment. Appellee did not advise the settlement, but told appellant he had the greater amount at stake and could do as he thought best about compromising the claim. If he did compromise for three-quarters of the judgment appellee would take three-quarters of its claim, or $600, and if he did not compromise it would furnish counsel to assist in the trial on appeal as it had in the lower court. There is no controversy about the facts except two witnesses for appellee testified that appellant made no response to the suggestion of appellee that it would take $600 in case of settlement, and two witnesses for appellant testified that he then said he would not pay $600. It is proved without contradiction that he afterwards talked with an officer of appellee about the compromise and was told that he would not advise him about that, but if he did compromise it would take $600. Appellee brought this action of assumpsit to recover that sum of $600, and had judgment on a verdict for that amount, from which this appeal is prosecuted. The court below tried the case on the theory that the total loss by fire was fixed at $4,000 by the judgment in the case against the railroad company in which the parties to this suit both participated, and refused evidence offered by appellant to the effect that

the total loss was $4,800, and that the evidence introduced in the railroad case conclusively showed it was $4,800. The jury were instructed, at the instance of appellee, that by reason of the undisputed facts (reciting them) it was entitled to recover $800 of the appellant unless the parties had agreed that in case of such settlement appellee would take $600, in which event it was entitled to recover only that amount; and refused instructions offered by appellant conflicting with that theory of the law. It also refused to admit evidence offered by appellant that he had expended $460, in attorneys' fees and expenses in and about the prosecution of his claim against the railroad company. In short, the loss of appellant was at least $4,000. His recovery from the wrongdoer and insurance company was $3,800, and deducting his expenses leaves his net recovery $3,340. He received $660 less than full indemnity for his loss. The court practically directed the verdict. If appellee was not entitled to a directed verdict the judgment should be reversed.

The general rule, we think, is that the contract of insurance is for indemnity, and if the insured receives satisfaction or part satisfaction for his loss from a wrongdoer who has caused the loss, the amount so received will be applied in full or partial discharge of the policy. (19 Cyc. 891.) If the loss is not satisfied by the wrongdoer, and the insurance company pays it, it is entitled to equitable subrogation to the claim of the insured against such wrongdoer. 19 Cyc. 893; *Peoria Marine & Fire Ins. Co. v. Frost,* 37 Ill. 333; *American Exp. Co. v. Haggard,* 37 Ill. 465; or, as said in *Chicago & A. R. Co. v. Glenny,* 175 Ill. 238, in such cases the insurer, after paying the loss caused by a wrongdoer, stands in the position of a surety, and becomes subrogated to the rights of the insured to the extent it has paid.

In the present case appellee, after paying the $800,

had an interest in the claim against the railroad company, but it could not bring an action in its own name against the wrongdoer. (*Peoria Marine & Fire Ins. Co. v. Frost, supra.*) It had a right to participate in the action brought by appellant. That right was recognized by the parties and acted upon. If appellant had refused to recognize appellee's rights in bringing and conducting the suit, he would in some proper proceeding have been compelled to recognize them. (*Hartford Ins. Co. v. Pennell,* 2 Ill. App. 609.) Still, it is very likely true that appellee's interest in the claim against the railroad company was primarily limited to any excess that appellant might receive from both the railroad company and itself over full indemnity for his loss. It is argued by appellee that this rule is changed by the fact that it participated in the suit against the railroad company with the understanding and implied contract between the parties that its interest was $800 in the amount recovered. There is much force in this suggestion, but we do not think the decision of the case necessarily turns on its validity. We are of the opinion that if appellant had compromised the judgment without the consent or knowledge of appellee, he would by that act have become liable to appellee in the full amount paid by it; that he did compromise with the consent of appellee that he might do so if he paid it three-quarters of the amount it had paid. He had no consent to compromise on any other terms, and we conclude that when he accepted the compromise with the railroad company he became bound by the conditions imposed by appellee, and this regardless of the question whether he had ever expressly or impliedly agreed to pay that amount, or had expressly said he would not pay it.

The only direct authority we have found on the effect of appellant's compromise is the late case of *Fire Ass'n of Philadelphia v. Schellenger,* 83 N. J. Eq. 144.

The insured had recovered from a wrongdoer the full amount of his loss, $6,000, and afterwards, without the knowledge or consent of the insurer, compromised the claim for $3,000. It was a case of hardship on the insured, as the court said, because he very likely settled with the wrongdoer under the belief that he was not liable to the insurance company. But the court said, without citing authorities, that there could not be the slightest doubt touching the law that the insurance company was subrogated to the rights of the assured to the amount of its payment; that the insured became a trustee of the insurer to the amount of its payment in the event of future collection from the person primarily liable for the loss; that when the loss should be paid by the wrongdoer to the assured he would of necessity become trustee for the insurance company to the amount it had paid under its policy of insurance; that the insurance company occupied the position of an equitable assignee of the rights of the assured to the extent of the payment; that when the assured brings a suit against the wrongdoer, the fact that he has received payment of the amount for which the insurance company was liable cannot be utilized by the wrongdoer as a defense or partial abatement of the claim; therefore any recovery against the wrongdoer is not affected by the fact that the insurance has been paid prior to that time. Any suit that is brought must be in the name of the assured. The railroad company is entitled to be protected against two suits. The assured cannot sue for the balance which is due to him over and above the insurance, and the insurance company bring another simultaneous suit in the name of the assured for the amount of insurance which has been paid. The railroad company is entitled to protection against the claim being split and two independent suits prosecuted, although the rights of the insurance company and the assured

are essentially independent rights. When the assured brings a suit against the wrongdoer it necessarily includes, and must include, the amount that the insurance company would be entitled to receive back by reason of insurance which it had paid; that when the assured assumes, without the knowledge or consent of the insurance company, to make a compromise settlement, he necessarily assumes to settle the claim of the insurance company. The assured had no right to settle or discharge the lien of the judgment without the co-operation, or at least an opportunity of co-operation, upon the part of the insurance company in that settlement. If he did so, he necessarily assumed the liability to repay to the insurance company the amount that had been paid to him; that the insurance company had rights in the judgment as well established, and as well settled, and as clearly defined, as the insured.

We are cited to no controlling authority in this State. The reasoning of the New Jersey court seems to us sound, and it seems to necessarily follow if appellant could not compromise the judgment without the consent of appellee without incurring a liability to pay appellee the full amount of $800, that, when he did get the consent of appellee to compromise for three-quarters of the judgment on condition that he pay appellee three-quarters of its claim, he was bound by the terms so imposed.

If we are right in the view of the case above expressed, it is immaterial whether the amount received by appellant from both the railroad company and appellee was $200 or $1,000 less than his loss, or whether the expenses incurred by him in prosecuting the suit against the railroad company should or not be taken into account in determining whether he had received full indemnity for his loss. Whatever may be the answer to those questions, the verdict was properly directed for appellee.

This disposes of the questions urged here except it is argued that the court erred in refusing appellant's application for a change of venue. That action of the court is abstracted as follows: "Petition for change of venue. Notice of application for change of venue. Order denying petition for change of venue," referring to pages 13, 16, 18 and 32 of the record. Reviewing courts have so many times said that they would not examine the record for matters not abstracted to find some reason for reversing a judgment that it is not necessary to cite the cases. The action of the court in that regard is not before us.

We conclude that on the admitted facts in this case appellee was entitled to the judgment it obtained; that the court, in effect, directed the verdict and did not err in so doing. The judgment is affirmed.

*Affirmed.*