**Hartford Fire Insurance Company, Appellee, v. Chicago Tunnel Terminal Company, Appellant.**

**Gen. No. 46,842.**

First District, Third Division.
January 16, 1957.
Released for publication March 5, 1957.

Schuyler, Richert & Stough, of Chicago, for appellant; Jay Stough, and Joseph R. Julin, of Chicago, of counsel.

William S. Jacob, of Chicago, for appellee.

JUDGE KILEY delivered the opinion of the court.

This suit was brought by Hartford Fire Insurance Company, called insurer herein, to recover $2,552.75 from the Chicago Tunnel Terminal Company, the lessee and indemnitor of the Central Terminal Railway Company, the insured, the sum paid for damages to the insured's property. The cause was submitted to the court on stipulated facts and the plaintiff recovered judgment for $1,276.38. Defendant has appealed from the judgment. Insurer has cross appealed claiming error in the disallowance of the full amount sought.

In 1914 the defendant and the Railway Company, referred to herein respectively as lessee and insured, entered into a lease of insured's underground space in which lessee was to construct and maintain tunnels for the hauling of freight, and elevator shafts connecting the tunnels to the insured's freight house. The agreement provided that the lessee should indemnify the insured and "save it harmless from, any and all loss or damage which it . . . may incur or suffer on account of injury to or destruction of its property, and from any and all claims for liability to any person or corporation whomsoever . . . whenever such loss, damage, or injury shall be caused by, or grow out of, or in any way result from, the . . . use or operation of said . . . tunnels. . . ."

540

In 1945 the insured obtained insurance covering the freight house and its contents from loss by fire. In September, 1946, a fire and explosion occurred in the leased tunnels and the freight house and its contents were damaged. Insured, pursuant to the agreement with lessee, notified lessee of the damages, but lessee refused to pay. Thereafter, the insurer paid the loss and received articles of subrogation from insured under the insurance contract. This suit followed.

Neither party agrees with the trial court's decision, based on the principles of contribution of co-insurers, giving plaintiff one-half of what it paid. The lessee contends that its agreement with the insured was solely for indemnification against any loss, and since the insured was compensated by the insurer, there is no longer any loss for which lessee is responsible, and therefore no right of action in insured to which insurer can be subrogated. Insurer contends that it is entitled to subrogation to the full amount of its payment.

All the cases agree that the insured cannot have double recovery, and that the insurer may be subrogated to recover from a third-party wrongdoer. (Pontiac Mutual County Fire & Lighting Ins. Co. v. Sheibley, 203 Ill. App. 527, affirmed 279 Ill. 118; Standard Acc. Ins. Co. v. Pellecchia, 15 N. J. 162, 104 A.2d 288; Union Insurance Soc. v. Consolidated Ice Co., 261 Mich. 35; American Surety Co. v. Bank of California, 133 F.2d 160.) The question is whether plaintiff should be subrogated to the insured's claim against lessee under the terms of the lease.

It is not our purpose to uncover a principle underlying the various decisions upon similar questions arising from suretyship, bailments, and insurance relationships. We do find, however, that the cases which favor the insurer rely upon two English decisions as the leading cases. (Darrell v. Tibbitts, L.R. 5 Q.B.D. (1880) 560; Castellain v. Preston, L.R. 11 Q.B.D. (1883)

380.) These cases are authority for the rule of subrogation that the insurer steps into the place of its insured "with regard to every right . . . and with regard to every contract which touches the subject-matter insured." (5 Q.B.D. 560, 563.) The case of Union Insurance Soc. of Canton v. Consolidated Ice Co., 261 Mich. 35, stated the same rule. Thus it is unimportant that there is no claim of negligence on the part of the lessee.

The Tibbitts case involved a landlord-tenant relationship, and the Castellain case involved a contract for the sale of insured property. The material difference between those two cases and the instant case is that in the English cases the third party had an absolute liability, whereas in the instant case, the lessee's contract was for indemnity.

A principle of decision in the Tibbitts and Castellain cases, and in the bailment case underlying them, is that the obligees on the primary contracts "had the primary liability" (5 Q.B.D. 566) as against the secondary liability of the insurer of the property. This principle appears to have been the reason for the decision in Chicago, St. Louis & New Orleans Railway Co. v. Pullman Southern Car Co., 139 U. S. 79, a leading case, in which the facts, more nearly than in the other cases, approach those in the instant case. In that case railroad cars owned by Pullman were leased to, and in the possession of, the defendant railroad. The Pullman Company's insurer was held subrogated to Pullman's claim against the railroad when the cars were destroyed by fire because "the liability of the railroad company is, in legal effect, first and principal, and that of the insurer secondary, not in order of time, but in order of ultimate liability." (139 U. S. 88.) The railroad's obligation there was to "repair all damages to said cars of every kind occasioned by accident

or casualty." There again the lessee had absolute responsibility and not the responsibility of an indemnitor.

The difficulty in the case before us is that both the lessee and the insurer are indemnitors, whereas in the English cases and the Pullman case the obligations of the third parties were absolute. The Pullman case was authority for a decision in favor of the insurer in a similar case where again the lessee agreed to pay for damage by fire originating on the lessee's premises. (F. H. Vahlsing, Inc. v. Hartford Ins. Co., Tex. Civ. App., 108 S.W.2d 947.)

There is no "ultimate liability," as in those cases, on the part of the instant lessee because there is no obligation under the lease except that of indemnity. We think, however, that there is a common element in the decisions favoring the insurers in bailment cases, upon one of which Darrell v. Tibbitts, L.R. 5 Q.B.D. 560, rests, in the landlord and tenant cases, and in the vendor-vendee case. (Castellain v. Preston, L.R. 11 Q.B.D. 380.) This is that "primary liability" was found to rest upon the person bound by the primary contract and in possession of the property insured. It is true that in those cases there was an absolute obligation, but we think, as Judge Vanderbilt thought in deciding Standard Acc. Ins. Co. v. Pellecchia, 15 N. J. 162, 104 A.2d 288, that imposing the primary obligation upon the third party is a better alternative than absolving the lessee from its indemnity obligation. Even though the primary contract, the lease, did not bind lessee absolutely, it is nevertheless the underlying and foundation agreement and implies in that sense an ultimate liability on lessee.

The obligation of the instant lessee was to indemnify against any loss and did not exclude losses otherwise covered, and the lessee should have anticipated that the freight house was, or would probably be, insured

543

and that any fire starting in the shaft would likely cause damage to the freight house. Moreover, the insurance policy was for approximately $14,650,000 and covered the freight house and its contents against fire in general, whereas the lessee's obligation was specific as to damage resulting from maintenance and use of the leased property.

We see no merit to the contention that upon payment of the loss by the insurance company there was no loss for which the lessee was responsible. The lessor and the insurance company are, with respect to lessee in these circumstances, "looked upon as one person" (Darrell v. Tibbitts, L.R. 5 Q.B.D. 560, 566), having a loss. (Pontiac Mutual County F. & L. Ins. Co. v. Sheibley, 203 Ill. App. 527, 530.)

We conclude that the lessor's right under the lease was unaffected by the insurer's obligation to insured and that the insurer was entitled to subrogation to insured's right against the lessee to the extent of the insurer's payment to insured. The judgment is accordingly reversed and judgment is entered here for insurer for the sum of $2,552.75.

Reversed and judgment entered here.

FEINBERG, P. J. and LEWE, J., concur.