RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0382P (6th Cir.)
File Name: 00a0382p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LEXINGTON INSURANCE
COMPANY, as subrogee of
New Plan Realty Trust,
        *Plaintiff-Appellee,*

        *v.*

F.W. WOOLWORTH
COMPANY,
        *Defendant-Appellant.*

No. 99-3609

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 98-00001—Jack Sherman, Magistrate Judge.

Argued: June 22, 2000

Decided and Filed: November 1, 2000

Before: NELSON, BOGGS, and DAUGHTREY, Circuit
Judges.

---

**COUNSEL**

**ARGUED:** Thomas J. Gruber, McCASLIN, IMBUS &
McCASLIN, Cincinnati, Ohio, for Appellant. Elliott R.
Feldman, COZEN & O'CONNOR, Philadelphia,

1

Pennsylvania, for Appellee.  **ON BRIEF:** Thomas J. Gruber, McCASLIN, IMBUS & McCASLIN, Cincinnati, Ohio, for Appellant.  Elliott R. Feldman, COZEN & O'CONNOR, Philadelphia, Pennsylvania, Bradley L. Snyder, ROETZEL & ANDRESS, Columbus, Ohio, for Appellee.

———————————

## OPINION

———————————

DAVID A. NELSON, Circuit Judge.  A shopping mall tenant appeals here from a judgment in favor of its landlord's casualty insurance carrier on a subrogation claim asserted against the tenant in the wake of a fire that damaged the leased premises.

A jury returned a verdict in favor of the tenant.  The district court was ultimately persuaded, however, that terms of the lease obligating the tenant to indemnify the landlord against all claims for personal injury or property damage arising out of the use and occupancy of the demised premises were sufficiently unambiguous to require the tenant to bear the loss occasioned by the fire even though the lease required the landlord to keep the premises fully insured against damage by fire and to repair or rebuild the leased structure should fire damage occur.

Upon *de novo* review, we conclude that the district court's construction of the lease cannot properly be said to have been compelled as a matter of law.  We shall therefore vacate the judgment *n.o.v.* and remand the case for entry of judgment on the verdict in favor of the tenant.

I

The defendant, F.W. Woolworth Co., was a long-time tenant at a Springfield Township, Ohio, shopping mall known as the Brentwood Plaza.  Woolworth's original landlord, Brentwood Plaza, Inc., had disposed of its interest in the mall

by the time of the fire, and an entity called New Plan Realty Trust had succeeded Brentwood as landlord. New Plan Realty carried property damage and business interruption insurance written by the plaintiff, Lexington Insurance Company.

The fire broke out during business hours on January 13, 1997, when an unknown patron set fire to some artificial flowers that Woolworth was displaying for sale inside the store. Although fire extinguishers were available, none of the Woolworth employees on duty at the time had been trained in their use. The fire caused extensive damage, and the parties have stipulated that Lexington paid New Plan Realty a total of $995,265.13 for repair of the building, removal of debris, and loss of rental income.

Invoking diversity jurisdiction, Lexington sued Woolworth in federal district court for recovery of an amount equal to the insurance settlement. The complaint asserted two causes of action, one sounding in negligence and the other in contract.

The case was tried to a jury of eight, a magistrate judge presiding by agreement between the parties, and the jury returned a verdict in which it found that Woolworth had not been negligent and had not broken its lease with New Plan Realty. Renewing a motion made at the close of all the evidence, Lexington asked the court to direct entry of judgment in the insurance company's favor as a matter of law. The court denied the motion as to the negligence claim but granted it as to the contract claim. With prejudgment interest calculated at a rate of $272.67 per day, the final judgment came to well over $1 million. Pursuant to a stipulation that an appeal would lie directly to our court, Woolworth filed a timely notice of appeal to the Sixth Circuit.

II

Lexington's contract claim was based solely on an indemnity provision (Article 19) in the lease that Woolworth had entered into in 1955 with New Plan Realty's predecessor

in interest. In Article 19, the full text of which is set forth in the margin,[1] Woolworth agreed to indemnify the landlord against "any and all claims and demands," whether claims and demands for personal injury, for loss of life, or for property damage, as long as the injury, loss, or damage occurred within the demised premises and arose out of the tenant's use of the premises. The tenant's obligation to indemnify the landlord was subject to an exception for claims and demands arising out of acts or omissions by the landlord itself, and there was a reciprocal undertaking by the landlord to indemnify the tenant against claims and demands for personal injury, loss of life, and property damage arising out of acts or omissions of the landlord or out of the tenant's use of the shopping mall's common facilities.

It is clear to us, notwithstanding Woolworth's contention to the contrary, that the property damage caused by the fire was damage "arising out of" Woolworth's use and occupancy of the leased premises. The fire was lit by a patron who had entered the premises as a business invitee of Woolworth, after all, and the combustible material to which the patron set fire was merchandise being offered for sale in the store. Woolworth argues that it is in the retail business, not the

---

[1] "Art. 19.  The Tenant during the term hereof shall indemnify and save harmless the Landlord from and against any and all claims and demands whether for injuries to persons or loss of life, or damage to property, occurring within the demised premises and arising out of the use and occupancy of said demised premises by the Tenant, excepting however such claims and demands whether for injuries to persons or loss of life, or damage to property, caused by acts or omissions of the Landlord.  The Landlord during the term hereof shall indemnify and save harmless the Tenant from and against any and all claims and demands whether for injuries to persons or loss of life, or damage to property, arising out of acts or omissions of the Landlord or arising out of the Tenant's use of the 'Common Facilities' as defined in Articles 15 and 16 hereof."

against a sometime tenant – the party that had actually generated the hazardous material – seeking indemnification under a provision of the lease in which the tenant had agreed to "defend, indemnify and save [Ohio Edison] harmless from and against any and all claims, demands, damages, actions or cause of actions . . . growing out of lessees' use of said premises . . . ." The *Stychno* court simply held that the lease obligated the tenant to indemnify Ohio Edison with respect to the claims asserted against that company by the current owner of the land. The *Stychno* case is obviously inapposite here, no claim comparable to that asserted against Ohio Edison having been asserted against the landlord in the case at bar. The situations would be analogous if Brentwood Plaza, Inc., were seeking indemnification from Woolworth with respect to a claim asserted by New Plan Realty, but that is not this case.

*Hartford Fire* is likewise inapposite. The lease at issue there contained an indemnity clause obligating the tenant to save the landlord harmless from, first of all, "any and all loss or damage which [the landlord] may incur or suffer on account of injury to or destruction of its property . . . ." The indemnity clause then went on to provide that the tenant should also save the landlord harmless "from any and all claims for liability to any person . . . whenever such loss, damage or injury shall be caused by . . . the use or operation of [the leased property]." The *Hartford Fire* court ordered indemnification under the first part of the clause, which has no counterpart in the case at bar, and not under the second part, which provided for indemnification with respect to "claims." The *Hartford Fire* opinion contains no indication, moreover, that the damage in question there was damage which the landlord itself had contracted to repair. *Hartford Fire* simply is not comparable to the case before us here.

Unpersuaded that Lexington's proffered reading of the lease is one that must be accepted as a matter of law, we **VACATE** the judgment in favor of Lexington and **REMAND** the case with instructions to enter judgment on the verdict in favor of Woolworth.

case comes to us, with a jury already having held that Woolworth committed no breach of its obligations under the lease, the ambiguity is enough to carry the day for Woolworth.[5]

Lexington cites various rules of contractual interpretation – *e.g.*, the "plain meaning" rule and the rule that the contract must be construed as a whole – in an attempt to show that there is no ambiguity. When these general principles are considered in the factual context presented here, however, it seems to us that they bolster Woolworth's case more than Lexington's. The "plain meaning" of the last sentence of Article 23, for example, as quoted in footnote 3, *supra*, strikes us as irreconcilable with Lexington's argument that Articles 23 and 24 were merely intended to make the landlord responsible for assuming the administrative burden of arranging for repairs in the first instance.

In addition to relying on general rules of construction in its effort to persuade us that no ambiguity exists, Lexington cites two decisions in support of the proposition that "[c]ourts uniformly have interpreted indemnity provisions as applying to direct claims by a lessor against a lessee for damage to leased property." The cases cited by Lexington in this connection are *Stychno v. Ohio Edison Co.*, 806 F.Supp. 663 (N.D. Ohio 1992), and *Hartford Fire Ins. Co. v. Chicago Tunnel Terminal Co.*, 12 Ill. App.2d 539, 139 N.E.2d 770 (1956). Neither case is on point.

*Stychno* involved the assertion of a claim by a landowner against the Ohio Edison Company, a former owner of the land, for property damage arising from improper disposal of hazardous wastes. Ohio Edison filed a third-party complaint

---

[5] The resolution of contractual ambiguities is a matter for the jury. See *Cincinnati Ins. Co. v. Control Serv. Tech., Inc.*, 677 N.E.2d 388 (Ohio Ct. App. 1996) (finding ambiguity in lease as to whether insurance company could proceed against tenant for its negligence in causing a fire and remanding for jury's consideration).

---

arson business. That is true – but it is also true, unfortunately, that intentional or negligent destruction of merchandise and other property by customers is one of the business risks retailers necessarily assume when they set up shop.

It is far less clear to us that anyone has asserted "claims and demands" against New Plan Realty within the meaning of that phrase as used in the indemnity provision of the lease – and the commitment to indemnify, under the plain language of Article 19, applies only with respect to "claims and demands." The insurance company has not shown that any claim or demand was made for personal injuries or loss of life, and the only conceivable claim or demand against New Plan Realty with respect to property damage would be a demand by Woolworth that the landlord fulfill its own contractual obligations under the very lease pursuant to which the landlord's subrogee seeks to hold Woolworth liable.

The pertinent contractual obligations of the landlord are set forth primarily in Article 24 of the lease, which is captioned "Damage to Premises." In that article, three of the four paragraphs of which are quoted in the margin,[2] the landlord

---

[2] "Art. 24. The Landlord agrees that it will keep the buildings on said 'Entire Premises' insured against loss or damage by fire, to the full fair insurable value thereof.

"The Landlord further agrees that if said buildings are damaged or destroyed by fire at any time after the date of this lease, or if, after such date, said buildings are damaged or destroyed through any other cause not directly attributable to the negligence of the Tenant, the Landlord will proceed with due diligence to repair or restore the same to the same condition as existed before such damage or destruction, and as soon as possible thereafter (but not prior to the beginning of the term of this lease, unless acceptable to the Tenant) will give possession to the Tenant of the same space as is herein demised without diminution or change of location.

agrees to keep the shopping mall's buildings fully insured against loss or damage by fire. The landlord further agrees that if buildings are damaged or destroyed by fire, the landlord, proceeding with due diligence, will repair or restore the same. Additional obligations are set forth in Article 23, "Repairs," portions of which are also quoted in the margin.[3]

It is conceivable, we suppose, that the contractual benefits conferred on the tenant in Articles 23 and 24 were intended to be largely negated by the indemnity obligation assumed by the tenant in Article 19. It is conceivable, in other words, that although the landlord promised to buy fire insurance and to repair or restore the building in the event of damage or destruction by fire – with the rent to abate while the building was being put back in shape – a demand by the tenant that

---

\* \* \*

"In the event of damage or destruction of the building on the premises herein demised, rent and additional rent, if any, shall abate from the date of such damage or destruction until the Landlord has repaired or restored said building and has delivered to the Tenant the demised premises in the manner and in the condition provided in this article."

[3] "Art. 23. The Landlord agrees to make and pay for all repairs, structural or otherwise, to the exterior of the building on the demised premises. . .and also to make and pay for all repairs to the interior of said building which may be of a structural nature and which are not made necessary by any unusual use of the demised premises by the Tenant . . . . Anything in this lease to the contrary notwithstanding the Landlord agrees that if in an emergency it shall become necessary to promptly make any repairs hereby required to be made by the Landlord, the Tenant may at its option proceed forthwith to have such repairs made and pay the cost thereof. The Landlord agrees to pay the Tenant the cost of such repairs on demand, and that if not so paid the Tenant may deduct the amount so expended by it from rent due or to become due."

---

the landlord keep the promises it made in the lease was nonetheless intended, because of Article 19, to be tantamount to the tenant's saying "never mind, I shall indemnify you and save you harmless from and against my own demand that you do what you promised to do." Under this seemingly paradoxical view of the lease, the primary purpose of Articles 23 and 24 was simply to identify the landlord as the party responsible for shouldering the administrative burden of arranging for restoration or repair in the first instance, while one of the purposes of Article 19 was to identify the tenant as the party ultimately responsible for bearing the cost of the work and for making up the abated rent.

If the lease had really been intended to assign these costs to the tenant, we confess ourselves at something of a loss to understand why the lease should not have required the *tenant* to buy insurance rather than requiring the *landlord* to do so. But be that as it may, the more important question is whether the language of the lease admits of an alternative interpretation. We think it does.

The alternative view, of course, is that Articles 23 and 24 were intended to assign costs of the sort at issue here to the landlord, backed up by insurance, with the tenant being obligated to provide indemnification only against claims and demands for costs that the lease did not expressly assign to the landlord. This strikes us as the better interpretation[4] – and arguably it is one that should have prevailed as a matter of law. At the very least, however, the conflicting interpretations we have described suggest that the lease is ambiguous – and given the procedural posture in which the

---

[4] The parties agree that Ohio law governs this dispute. Under Ohio law, specific contractual provisions control conflicting general provisions. See, *e.g., Monsler v. Cincinnati Cas. Co.*, 598 N.E.2d 1203, 1209 (Ohio Ct. App. 1991). To the extent that there may be some measure of tension between Article 19, which is a general indemnity provision, and Articles 23 and 24, which specifically address fire damage and repairs, the latter provisions should control.