SUBURBAN COMMUNITY HOSPITAL *v.* LINDQUIST, APPELLANT;
BLUE CROSS OF NORTHEAST OHIO, APPELLEE.

[Cite as Suburban Community Hospital  v. Lindquist (1982),
69 Ohio St. 2d 302.]

(No. 81-273—Decided February 19, 1982.)

*Manlove & Fuhry Co., L.P.A.,* and *Mr. Kenneth A. Fuhry,* for appellant.

*Messrs. Thompson, Hine & Flory* and *Mr. David J. Hooker,* for appellee.

*Per Curiam.* This cause requires that we determine the

meaning of the word "entitled" in Section 7F of the Employee Certificate. Appellee correctly observes that we should apply the usual and ordinary meaning for this term unless its meaning is ambiguous. *Jackson* v. *Metropolitan Life Ins. Co.* (1973), 34 Ohio St. 2d 138, 140, quoting, with approval, *Fidelity & Cas. Co.* v. *Hartzell Bros. Co.* (1924), 109 Ohio St. 566, 569. Therefore, appellee urges us to adopt the ordinary definition of "entitled." [1]

Yet, we must read the word "entitled" in context. That is, Section 7F refers to the insured's being "entitled under the Hospital Insurance portion * * * of Title One of Public Law 89-97 cited as 'Health Insurance for the Aged Act' * * *." Title 42 of the United States Code codifies the relevant portions of Public Law 89-97. At the time of appellant's hospitalization, Section 426, Title 42, U. S. Code, provided, in pertinent part:

"(a) Every individual who—

"(1) has attained age 65, and

"(2) is *entitled* to monthly insurance benefits under section 402 of this title or is a qualified railroad retirement beneficiary, shall be *entitled* to hospital insurance benefits* * *." (Emphasis added.)

At the same time, Section 402 of Title 42 provided, in pertinent part:

"(a) Every individual who—

"(1) is a fully insured individual (as defined in section 414[a] of this title),

"(2) has attained age 62, *and*

"(3) *has filed application* for old-age insurance benefits or was entitled to disability insurance benefits for the month preceding the month in which he attained the age of 65, shall be *entitled* to an old-age insurance benefit * * *." (Emphasis added.)

---

[1] The Court of Appeals, in its opinion, used the definition of the verb "entitle" found in Webster's New International Dictionary, Second Edition: "[t]o give a right or legal title to * * *." We note, however, that the right to something may be different than the legal title. For example, a purchaser under a contract for sale of real property acquires various rights but *not legal title.* See *Churchill* v. *Little* (1872), 23 Ohio St. 301, 307. Whether this nuance is consciously or otherwise part of the usual and ordinary meaning is, of course, uncertain. Nevertheless, this uncertainty demonstrates that the use of the word "entitled" in Section 7F is ambiguous.

Clearly, one of the prerequisites to being "entitled" to Medicare is filing an application in accordance with Section 402(a)(3).[2] We must impute knowledge (or at least constructive knowledge) of the provisions of Public Law 89-97 to appellee, because agents for appellee drafted the Employee Certificate. Likewise, we must construe the ambiguity arising from any difference between the dictionary definition of "entitled" and its definition in Public Law 89-97 against appellee. "A contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubtful, uncertain or ambiguous. (Paragraph one of the syllabus of *Toms* v. *Hartford Fire Ins. Co.,* 146 Ohio St. 39, approved and followed.)" *Munchick* v. *Fidelity & Cas. Co.* (1965), 2 Ohio St. 2d 303, paragraph one of the syllabus. This rationale coincides with the previous statements of this court that exclusions in an insurance contract are not preferred. See *Home Indemnity Co.* v. *Plymouth* (1945), 146 Ohio St. 96, paragraph two of the syllabus; *American Financial Corp.* v. *Fireman's Fund Ins. Co.* (1968), 15 Ohio St. 2d 171, 173.

Accordingly, we reverse the judgment of the Court of Appeals[3] and remand the cause to the trial court for further proceedings.

---

[2] Paul T. Jones, District Manager of the Social Security Administration, testified on direct examination by appellant that one must apply for Medicare to be entitled to benefits:

"Q. Mr. Jones, how does a person get a hospital bill covered by Medicare?

"A. He files a claim for benefits, and if he is insured and meets the other conditions, he would be entitled to Medicare benefits.

"Q. A person must apply for the coverage in order to become entitled to the benefits?

"A. Yes. The basic conditions would be age 65, file an application, and be insured.

"Q. It is not enough then just to be 65 and fully insured?

"A. No. You must file an application.

"Q. So, a person must apply to become entitled to the benefits?

"A. Yes.

" * * *

"Q. So, Mr. Jones, a person must apply to become entitled to these benefits?

"A. Yes.

"Q. Can a person get the benefits without applying?

"A. No. You mean by 'without applying,' without a formal application? No.

"Q. What if the person is eligible for the benefits but he hasn't applied for them?

"A. Wouldn't be entitled."

[3] Our determination as to the meaning of the word "entitled" is a sufficient basis for reversal. Therefore, we need not review appellant's other propositions of law:

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER and C. BROWN, JJ., concur.

HOLMES and KRUPANSKY, JJ., dissent.

KRUPANSKY, J., dissenting. In my opinion, the majority decision creates an ambiguity in the meaning of the contract by assigning a highly technical definition to a common English word. I must, therefore, respectfully dissent.

It is well-established that words in an insurance contract are to be read according to their common ordinary meaning, unless there is an ambiguity. *Jackson* v. *Metropolitan Life Ins. Co.* (1973), 34 Ohio St. 2d 138; *Olmstead* v. *Lumbermens Mutl. Ins. Co.* (1970), 22 Ohio St. 2d 212. As stated in *Yeager* v. *Pacific Mutual Life Ins. Co.* (1956), 166 Ohio St. 71, paragraph two of the syllabus:

"An insurance policy constitutes a contract, its terms must be given a reasonable construction, and an ambiguity which is created by giving a strained or unnatural meaning to phrases or by mere casuistry does not constitute an ambiguity requiring construction."

In the majority's opinion, "entitled" should be construed according to the highly technical meaning of that term as used in Section 426, Title 42, U. S. Code. The result is a strained construction given to an otherwise unambiguous word.

As the Court of Appeals correctly noted, when "entitle" is given its common ordinary meaning, it is clear appellant was entitled to receive Medicare benefits. It is undisputed that appellant had a right to have his hospital expenses covered under Medicare, but in refusing to apply, he elected not to receive Medicare benefits. The record reveals appellant could have recovered under Medicare even if he had delayed applying for 12 months after the hospital expenses were incurred. Appellant however voluntarily declined to avail himself of the Medicare benefits to which he was entitled.

The necessity of applying for Medicare was made known to appellant when he received the following message in a letter from Suburban Community Hospital: "Blue Cross has refused

whether appellee's acceptance of premiums operates as an estoppel and whether the trial court erred by denying appellant's request for a jury trial.

payment until you sign up for Medicare. Since you refuse to do this we have no other choice but to transfer your account to self pay." Regarding this letter, appellant testified "I didn't think this was legitimate." Yet, according to appellant's testimony, he never contacted Blue Cross to inquire about the letter.

Thus, appellant was notified by Suburban Community Hospital to apply for Medicare, and although he still had six months within which to apply after receiving this notice, he refused to do so.

The majority decision permits appellant to choose between coverage under the Blue Cross policy and Medicare when the clear language of Section 7F of the Blue Cross policy provides that it does not insure for services which can be furnished under Medicare. Section 7F cannot mean appellant has the option of avoiding its effects indefinitely simply by refusing to apply for Medicare; such an interpretation renders Section 7F meaningless and penalizes Blue Cross for appellant's failure to excercise his rights under Medicare. As stated in *Fidelity & Cas. Co.* v. *Hartzell Bros. Co.* (1924), 109 Ohio St. 566, 569, "this court cannot make a new contract for the parties where they themselves have employed express and unambiguous terms."

Appellant argues Blue Cross should be estopped from asserting Section 7F as a defense because Blue Cross continued to accept premiums from appellant after it knew appellant was entitled to Medicare. The gist of appellant's argument is, because appellant was paying premiums for full coverage, Section 7F should be read out of the policy. This argument ignores Section 10F of appellant's policy which gave appellant the option of electing coverage under a policy designed for persons eligible for Medicare benefits.[4] If appellant had chosen to enroll under such a policy, his premiums would have been less expensive. According to his testimony, however, appellant neglected to read his policy, and he was

---

[4] Section 10F of appellant's Blue Cross policy provides in relevant part:

"Any Certificate Holder, or his spouse if enrolled under this Certificate becoming eligible for coverage under the Hospital Insurance Portion of Title One of Public Law 89-97 (Medicare), by reason of reaching the age of sixty-five (65) or otherwise, shall be entitled to enroll for a Certificate then being issued by the Plan specifically for persons eligible for Medicare of the same general class as this Certificate. * * * "

unaware of this option. He, therefore, continued to pay the higher premiums, and he now claims Blue Cross' acceptance of those premiums somehow induced him to continue paying them. It is difficult to see how Blue Cross should be held responsible for appellant's failure to choose a policy with reduced premiums when appellant's policy clearly informed him of his option to do so.

Appellant's final argument is that the Court of Appeals erred in affirming the trial court's denial of his motion for "Jury Trial Notwithstanding Waiver." The Court of Appeals found appellant's motion for a jury trial, which was filed some eight months after the complaint was filed, failed to show the denial of a jury trial would prejudice his case.

Appellant argues the trial court abused its discretion in refusing to order a jury trial. A party claiming abuse of discretion carries a heavy burden. Indeed, as one Ohio appellate court has stated: "To constitute an abuse of discretion, an unreasonable, arbitrary or unconscionable attitute on the part of the trial court must be shown by the party asserting a claimed abuse of discretion." *Lee* v. *Jennings Transfer Co.* (1967), 14 Ohio App. 2d 221, 223.

In his "Brief in Support of Motion for Jury Trial," appellant's counsel explained that subsequent to filing the complaint, he learned through discovery that certain questions of fact would be crucial in the case. The trial court, upon denying appellant's motion, found counsel's delay in discovery was not good cause. There appears to be nothing unreasonable in the trial court's finding. In my opinion, there was no abuse of the trial court's discretion nor reversible error in the denial of appellant's untimely request for a jury trial. The Court of Appeals correctly found appellant failed to demonstrate abuse of discretion on the part of the trial court.

For the foregoing reasons, I would affirm the judgment of the Court of Appeals.

HOLMES, J., concurs in the foregoing dissenting opinion.