**Leonoid STYCHNO, Plaintiff,**

v.

**OHIO EDISON COMPANY, Defendant/Third–Party Plaintiff,**

v.

**Linda MARSTELLER, et al., Third–Party Defendants.**

**No. 5:90 CV 02096.**

United States District Court, N.D. Ohio, E.D.

Aug. 3, 1992.

---

See also 806 F.Supp. 676.

Thomas E. Schubert, Fred A. Culver, Warren, Ohio, for Leonoid Stychno.

Jeffrey J. Casto, Roetzel & Andress, Akron, Ohio, for Ohio Edison Co.

Thomas C.B. Letson, Sr., Letson, Griffith, Woodall & Lavelle, Warren, Ohio, for Linda and William Marsteller.

Harley M. Kastner, Keith L. Pryatel, Millisor & Nobil, Cleveland, Ohio, for Summit–Warren Industries Co., Harold F. Glunt, and John S. Petrilla.

## ORDER

SAM H. BELL, District Judge.

Currently before the court is a motion to dismiss Ohio Edison's third party complaint. (Docket # 56) The moving parties are two third-party defendants, Summit–Warren Industries and Harold F. Glunt. This motion requests prejudicial dismissal of the entire third party complaint pursuant to Federal Rule of Civil Procedure 12, subdivisions (b)(6) and (c). This motion is the exclusive subject of the following order.

## BACKGROUND

In its third party pleading, Ohio Edison seeks to shift liability it may incur for hazardous waste contamination under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). As such, it is helpful to review both the circumstances surrounding the underlying litigation and the allegations of the defendant/third party plaintiff.

The above captioned case was originally instituted by Leonoid Stychno on the 26th of November, 1990. By way of amended complaint, Stychno claims that he is currently the owner of a parcel of real property located in the City of Warren, Trumbull County, Ohio.[1] Stychno alleges that during Ohio Edison's ownership of the property, the defendant, Ohio Edison, improperly disposed of asbestos and polychlorinated biphenyls ("PCBs"). Consequently, plaintiff seeks a declaration from this court that Ohio Edison is responsible for anticipated clean-up costs pursuant to CERCLA, 42 U.S.C. § 9607. Alternatively, plaintiff seeks an equitable share of these costs in accordance with a different provision of the same Act, 42 U.S.C. § 9613(f).

Ohio Edison's first third-party complaint was filed with this court in the Fall of 1991. The instant motion to dismiss, filed on the 7th of November, 1991, is addressed to that complaint. On November 29, 1991, this court granted Ohio Edison leave to file an amended pleading; it contains three counts. The first count alleges that the moving parties here, Summit–Warren and Glunt, leased the disputed property and that these third party defendants were the persons who "ordered, caused, contributed, generated, or participated in ... disposal" [of the hazardous wastes]. (Amended Third–Party Complaint at para. 9). This action, Ohio Edison claims, makes the movants herein, Summit–Warren and Glunt, liable for complete or partial contribution in the event plaintiff Stychno obtains a judgment against Ohio Edison. Ohio Edison seeks such contribution pursuant to the provisions of CERCLA, the "federal common law, other applicable law ... or other equitable relief."

In count two of the amended third-party complaint, Ohio Edison asserts that third-party defendants Summit–Warren and Glunt, as signatories to a written lease agreement, have breached their contractual obligations to defend Ohio Edison in the underlying litigation. It is undisputed that this lease contained the following provision upon which Ohio Edison bases this claim:

1. The co-owner of this property, Nestor Stychno, has filed a bankruptcy petition, apparently precluding his joinder in this action pursuant to the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362.

Lessees agree to defend, indemnify and save Lessor harmless from and against any and all claims, demands, damages, actions or causes of action, together with any and all losses, costs or expenses in connection therewith or related thereto asserted by any person or persons for bodily injury, death or property damage arising or in any manner growing out of Lessees' use of said premises during the term of this Lease or any extension thereof.

(Amended Third–Party Complaint, Exhibit C at 2). Despite the indemnification language recited above, it is clear that the third party plaintiff seeks damages for breach of Summit–Warren and Glunt's duty to defend.[2] The third count asks this court for declaratory judgment "concerning the rights, duties, and obligations of the parties under Plaintiff's Amended Complaint and/or the agreements referenced in Count II of the Amended Third–Party Complaint."

The third-party defendants' motion to dismiss, addressed to the initial third-party complaint, necessarily contains arguments which have been obviated by the filing of the amended third-party complaint. The defendant/third party plaintiff contends, and this court agrees, that the amended complaint "renders moot all of the arguments contained in the Memorandum in Support of Third–Party Defendants' Motion to Dismiss except two: first, that a 'defunct corporation and its shareholder distributee cannot be held liable under CERCLA' ... and second, that Plaintiff's Complaint does not trigger Summit–Warren Industries' or Harold Glunt's duty to defend Ohio Edison." (Third Party Plaintiff's Memorandum Opposing Third–Party Defendant's Motion to Dismiss at 1, 2). This court, then, here limits its discussion to these two remaining issues.

## STANDARD OF REVIEW

When considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is constrained to accept as true the allegations of a complaint. *Associated Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983), *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062, 1065 (6th Cir.1984). The motion to dismiss under 12(b)(6) should be denied unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Nishiyama v. Dickson City*, 814 F.2d 277, 279 (6th Cir.1987) (*en banc*).

Similarly, when considering a Rule 12(c) motion, the court must accept all factual allegations of the complaint as true. *Beal v. Missouri Pac. R.R.*, 312 U.S. 45, 51, 61 S.Ct. 418, 421, 85 L.Ed. 577 (1941); *Paskvan v. City of Cleveland Civil Service Commission*, 946 F.2d 1233, 1235 (6th Cir. 1991). The motion is granted when the movant is entitled to judgment as a matter of law. *Paskvan*, 946 F.2d at 1235. Thus, the analytical framework for motions requesting judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) mirrors that utilized under 12(b)(6). When, as here, a "[d]efendants' motion for judgment on the pleadings under Rule 12(c) is essentially a challenge to the legal basis of the complaint ... such a challenge is more appropriately viewed as a motion to dismiss for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6)." *Moxley v. Vernot*, 555 F.Supp. 554, 556 (S.D.Ohio 1982) (Rice, J.,); *see also Drouillard v. Roche Biomedical Laboratories, Inc.*, 861 F.2d 720 (6th Cir.1988) ("Although styled as a motion under Rule 12(b)(6), defendant's motion is actually for judgment on the pleadings under Rule

---

**2.** *See* Third–Party Plaintiff's Memorandum Opposing Third–Party Defendants' Motion to Dismiss at 1 ("The Amended Third–Party Complaint essentially drops all claims based on a contractual or common law duty to indemnify, but preserves all claims based on a contractual duty to defend.")

12(c). Our standard of review, however, is the same.").

With these standards in mind, the court will scrutinize the complaint in order to determine whether it states a viable cause of action.

### LAW AND ANALYSIS

In their motion to dismiss, the third-party defendants Summit–Warren and Glunt assert that they, as a defunct corporation and shareholder distributee, cannot be held liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Courts are currently divided on their approach to this issue. It has not been considered by either the Sixth Circuit or any Ohio district court.

■ In its complaint, the defendant/third party plaintiff seeks to hold the third-party defendants wholly or partially liable for any response costs incurred pursuant to §§ 107(a)(2) and 113(f) of CERCLA. Section 107(a)(2) holds liable "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of". 42 U.S.C. § 9607(a)(2). Section 113(f) provides for contribution in the case where fault is divisible. This section provides the following:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.

42 U.S.C. § 9613(f)(1). Essential to liability under these sections is identification of the defendant as a "person" within the meaning of CERCLA. Section 101(21) of the statute provides that "the term "person" means an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21) CERCLA, then, gives broad definition to the term "person", arguably triggering the inference that the term intends to cover dissolved corporations. Nevertheless, it must be recognized that the statute is silent on the liability of dissolved corporations and their shareholder distributees. This discrete issue merits resolution and is the subject of some controversy.[3]

The first line of decisions dealing with the matter at hand is best typified by the Ninth Circuit's decision in *Levin Metals Corp. v. Parr–Richmond Terminal Co.,* 817 F.2d 1448 (9th Cir.1987). *See also Columbia River Service Corp. v. Gilman,* 751 F.Supp. 1448 (W.D.Wash.1990); *Onan Corp. v. Industrial Steel Corp.,* 770 F.Supp. 490 (D.Minn.1989), *aff'd* 909 F.2d 511 (8th Cir.1990), *cert. denied* 498 U.S. 968, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). In *Levin,* the plaintiff brought a CERCLA action to recover response costs against a corporation which had dissolved fourteen years prior to commencement of plaintiff's suit. In their opinion, the judges of the Ninth Circuit, without discussion, followed the dictates of Federal Rule of Civil Procedure 17(b). Rule 17(b) provides:

> The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.

This rule applies to dissolved corporations. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1563 (1971). The *Levin* court followed Rule 17(b) and affirmed the district court's application of California corporations law, which prohibited suit against the dissolved corporation. In the two paragraphs the Ninth Circuit devoted to the issue of whether this California law was

**3.** The third-party defendants have not addressed the issue of Harold Glunt's liability. The relevant portion of their motion to dismiss is addressed entirely to whether a "defunct corporation and its shareholder distributee can … be held liable under CERCLA." From the face of the complaint, it appears that Harold Glunt signed the lease agreement both as president of Summit–Warren Industries and in his individual capacity. As such, there is no apparent reason why the CERCLA complaint lodged against him should be dismissed. Accordingly, the Rule 12 motion as it relates to the CERCLA claims against Harold Glunt is denied.

preempted by CERCLA, the court concluded:

> Levin ... argues that, to the extent that California law prevents imposition of liability on a dissolved corporation, it impedes and obstructs the basic purposes of CERCLA, and is invalid.... Levin's preemption argument turns on its characterization of the California law here involved as law limiting imposition of *liability*. A more accurate characterization is that the law determines *capacity* to be sued. Levin's interpretation, if followed, would prevent courts from looking to state law to determine whether a dissolved corporation could be sued in any case involving a federal cause of action. We reject this reasoning and hold that CERCLA does not preempt California law determining capacity to be sued.

*Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 817 F.2d at 1451. The flaws in this analysis are apparent. In fact, this decision has been tacitly criticized by a district court within the Ninth Circuit. *See Columbia River Service Corp. v. Gilman*, 751 F.Supp. at 1453.

Federal law may preempt state law in three ways; by explicit congressional definition of the scope of any preemption, by occupation of an entire regulatory field, or by conflicting with state law. *Michigan Canners & Freezers Assoc., Inc. v. Agricultural Marketing and Bargaining Board*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2522, 81 L.Ed.2d 399 (1984). A federal/state law conflict arises in two situations. First, when compliance with both the state and federal law may be impossible. *Id.* (*citing Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963)). Second, when a conflict arises under circumstances which the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (*quoting*

*Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). In this court's opinion, either the first or last basis for preemption is implicated by the matter at bar.

The argument for explicit Congressional preemption is compelling. Section 107 of CERCLA, the primary liability section of that statute, begins with the following phrase:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set for in subsection (b) of this section ... [enumerated parties] ... shall be liable....

42 U.S.C. § 9607(a). At least two district courts have concluded that this section preempts either Rule 17(b) and, by implication, state capacity laws, or state capacity laws alone.[4] *See United States v. Sharon Steel Corp.*, 681 F.Supp. 1492 (D.Utah 1987); *United States v. Distler*, 741 F.Supp. 643 (W.D.Ky.1990) (Johnstone, J.). In his well reasoned opinion, Judge Jenkins in *Sharon Steel* succinctly identified the most glaring fault in the Ninth Circuit's *Levin* decision:

> The distinction the court of appeals relied on between statutes limiting liability and those defining capacity to be sued is a distinction without a difference. Every statute limiting liability defines, at least in part, one's capacity to be sued, and every statute limiting one's capacity to be sued also limits liability. Indeed, the surest way to limit one's liability is to take away his capacity to be sued. One cannot be held legally responsible for his acts if that responsibility cannot be enforced.

> Applying the court of appeals' reasoning, a state could not directly limit the liability of owners and operators of hazardous waste sites, but it could indirectly limit their liability by taking away their capacity to be sued. The practical effect is the same, whether the limitation is direct or indirect.

**4.** The differences in these opinions, of course, is largely semantic. The Federal Rules may be preempted when Congress clearly intends that result. *United States v. Gustin-Bacon Div., Certain Teed Prods. Corp.*, 426 F.2d 539, 542 (10th Cir.), *cert. denied*, 400 U.S. 832, 91 S.Ct. 63, 27 L.Ed.2d 63 (1970). Courts produce the same effect whether they preempt state capacity laws or Rule 17(b), which mandates the application of those state laws.

*Sharon Steel*, 681 F.Supp. at 1497. Congress clearly intended to impose liability without regard to "any other provision or rule of law." 42 U.S.C. § 9607. It is difficult for this court to conceive that any other language could more forcefully express an intent to preempt any law, state of federal, which undermines CERCLA's remedial scheme.

It has been argued, however, that had Congress intended such expansive preemption, it would have included the broad language found in other federal statutes. *See, e.g., Columbia River Service Corp. v. Gilman*, 751 F.Supp. 1448, 1452 (W.D.Wash 1990) (*citing* Note, *Corporate Life After Death: CERCLA Preemption of State Corporate Dissolution Law*, 88 Mich.L.Rev. 131, 141 (1989); § 514 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982)). If one accepts this proposition, CERCLA may still preempt state capacity laws if they "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress". *Michigan Canners & Freezers Assoc., Inc.*, 467 U.S. at 469, 104 S.Ct. at 2523. Application of state capacity laws would unquestionably thwart congressional intent.

■ Courts have not hesitated to identify the many laudatory goals of CERCLA. *See Gilman*, 751 F.Supp. at 1452–53. Nevertheless, Congress' intent may best be summarized by one simple aim: "that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created." *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1418 (6th Cir.1991). If a dissolved corporation lacked the capacity to be sued under state law, it is not difficult to envision widespread corporate dissolution whenever a new toxic site is identified. It is unlikely Congress intended to grant this de facto veto to state legislators or unscrupulous businessmen. A conclusion which would permit fifty widely varied schemes of liability would subvert Congressional intent. Ohio's statutes defining corporate capacity to be sued is and must be preempted by CERCLA.[5]

With the preemption of Ohio's capacity laws established, it becomes necessary to determine whether dissolved corporations may be held liable under CERCLA. On the face of their holdings, it appears that courts which have addressed this question are, again, divided. In *United States v. Distler*, 741 F.Supp. at 647, the court granted the defendant's motion to dismiss because the government had shown "no

---

5. The court observes, without so holding, that Ohio's capacity statute would not bar the instant lawsuit. Here, the third-party defendants stand accused of fouling land they held by lease in the late 1970s, before CERCLA's effective date in December 1980. There is abundant authority for the application of CERCLA to acts occurring before its effective date. *United States v. Distler*, 741 F.Supp. at 462; *State ex. rel. Brown v. Georgeoff*, 562 F.Supp. 1300 (N.D.Ohio 1983); *United States v. Northeastern Pharmaceutical*, 810 F.2d 726 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987), *cited with approval in United States v. R.W. Meyer, Inc.*, 889 F.2d 1497 (6th Cir.1989), *cert. denied*, 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990). In 1982, the third-party defendant's articles of incorporation were cancelled for failure to pay taxes pursuant to Ohio Rev.Code § 5733.20. (Ex. "A", Third–Party Defendants' Motion to Dismiss). Thus, these defendants claim they are not amenable to suit. This assertion is erroneous. Section 5733.20 does revoke corporate powers. However, this revocation is expressly subject to the provisions

of Ohio Rev.Code § 1701.88. Section 1701.-88(B) pertinently provides that "[a]ny claim ... by or against the corporation *or which would have accrued against it may be prosecuted to judgment....*" As one court concisely observed:

> The cancellation [of the articles of incorporation pursuant to 5733.20] represents no more than a suspension of the corporation's right to do business. The corporation may continue to operate as is necessary in the winding-up process, and formal action *in quo warranto* is required to revoke its corporate charter. Moreover, even if a corporation is dissolved it may still be sued, and satisfaction or performance of any judgment obtained may be enforced against such corporation. *North Consultants, Inc. v. Stimel–Givens*, No. 83AP–851, slip op., 1985 WL 10281 (Ohio App. May 14, 1985) (citations omitted). In other words, even if CERCLA did not preempt the above analysis, the third-party defendant would not be relieved of the necessity to defend against this action.

convincing authority to support its position that a corporation which has completely wound down and distributed its assets can be held liable under CERCLA." This court believes the most significant part of this holding is the *Distler* court's notation that the defendant in that action had "completely wound down and distributed its assets." *Id.* In fact, the *Distler* court tacitly expressed its opinion that the corporate defendant before it was both "dead and buried". *Id.* This phrase, borrowed from *Sharon Steel,* is quite relevant. The *Sharon Steel* court reasoned that where "the funeral is still going on" and "corporate assets that might be used to pay cleanup costs have not yet been distributed to shareholders" there is no good reason not to hold that corporation liable under CERCLA. 681 F.Supp. at 1498. This court agrees.

By enacting CERCLA, Congress clearly intended to hold polluting "persons" liable "notwithstanding any other provision or rule of law, and subject only to the defenses set forth in [42 U.S.C. § 9607(b)]". 42 U.S.C. § 9607. Whether a inactive corporation falls within the scope of the definition of "person" under CERCLA necessarily depends upon whether that corporation still holds assets. If it does not, any judgment entered against it would be futile. The third-party defendants have produce very little evidence to show that Summit–Warren is "dead", and no evidence to establish that the corporation is "buried". The third-party plaintiff is entitled to determine whether the defendant corporation is both dead and buried. The third-party defendants' motion directed to Ohio Edison's CERCLA claim must be denied.

The second portion of the third-party defendants' motion to dismiss asserts that the initial Stychno complaint in this matter does not trigger their duty to defend Ohio

Edison. As noted above, the Ohio Edison/Summit–Warren lease, providing the basis for this dispute, contains the following provision:

> Lessees agree to defend, indemnify and save Lessor harmless from and against any and all claims, demands, damages, actions or causes of action, together with any and all losses, costs or expenses in connection therewith or related thereto asserted by any person or persons for bodily injury, death or property damage arising or in any manner growing out of Lessees' use of said premises during the term of this Lease or any extension thereof.

(Amended Complaint, Exhibit D at 2). More simply stated, the third-party defendants agreed "to defend ... Lessor ... against any and all claims ... asserted by any person or persons for ... property damage arising or in any manner growing out of Lessee's use of said premises." (*Id.*) Ohio Edison brings, in the second count of its third-party complaint, a claim that Summit–Warren and Mr. Glunt have breached this contractual duty to defend.

In this breach of contract claim, it is clear that Ohio law is controlling. *See e.g., Borden v. Affiliated FM Insurance Co.,* 682 F.Supp. 927, 928–929 (S.D.Ohio 1987) (Graham, J.), *aff'd,* 865 F.2d 1267 (6th Cir. 1989), *cert. denied,* 493 U.S. 817, 110 S.Ct. 68, 107 L.Ed.2d 35 (1989). Although the document at issue in the instant case is a lease of real property, due to the nature of the provisions at issue both the parties and this court have, by necessity of logic, turned to insurance law for analytical assistance.[6]

In contracts such as this, a party's obligation to defend suits is entirely independent of the obligation to indemnify. *National Casualty Co. v. Insurance Company of North America,* 230 F.Supp. 617, 622

---

**6.** It is not altogether clear whether such reliance would alter the outcome of this case. *See Rhoades v. Equitable Life Assurance Society,* 54 Ohio St.2d 45, 47, 374 N.E.2d 643, 644 (1978):

> It is well settled in Ohio that insurance policies should be enforced in accordance with their terms *as are other written contracts.*

> Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties.

(emphasis added). *See also Corabi v. CNA Insurance Companies,* 1988 WL 363612, 1988

(N.D.Ohio 1964) (Connell, C.J.); *Four–O Corp. v. Cincinnati Ins. Co.*, 1991 WL 17216, *1, 1991 Ohio App. LEXIS 609, *3 (1991), *motion overruled*, 61 Ohio St.3d 1413, 574 N.E.2d 1076 (1991) ("[the] duty to defend ... is separate and often broader than [the] duty to indemnify.").[7] *See also, Arco Industries Corp. v. The Travelers Ins. Co.*, 730 F.Supp. 59, 73 (W.D.Mich. 1989) ("the duty to defend ... is distinct from the duty to indemnify....").  Under Ohio law:

> The test of the duty ... to defend ... is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured.

*Motorists Mutual Ins. Co. v. Trainor*, 33 Ohio St.2d 41, 294 N.E.2d 874 (1973) (*Socony–Vacuum Oil Co. v. Continental Cas. Co.*, 144 Ohio St. 382, 59 N.E.2d 199 (1945) approved and followed); *Ohio Casualty Insurance Co. v. Joseph Sylvester Construction Co.*, 1991 WL 206628, *4, 1991 Ohio App. LEXIS 4629, *9 (Trumbull Cty.1991), *motion overruled*, 63 Ohio St.3d 1411, 585 N.E.2d 835 (1992).  In 1984, the Ohio Supreme Court clarified this standard, holding that:

> Where the ... duty to defend is not apparent from the pleadings in [the main case], but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept defense of the claim.

*Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 459 N.E.2d 555 (1984); *see also, Zanco, Inc. v. Michigan Mutual Ins.*

*Co.*, 11 Ohio St.3d 114, 464 N.E.2d 513 (1984).[8]

In the main case, plaintiff Stychno's complaint against defendant/third-party plaintiff Ohio Edison is one for recovery of response costs under CERCLA.  Plaintiff Stychno's prayer for relief requests:

> 1.  That the Court render judgment declaring that Defendant is liable for necessary costs of response incurred by Plaintiff in the cleanup and lawful disposal of the hazardous substances above in this Complaint;
>
> 2.  In the alternative, should the Court determine that Defendant is not solely responsible for such costs, that the Court declare Defendant liable for contribution to Plaintiff in such amount as may be allocated using equitable factors as the Court determines to be just....

(Stychno Complaint at para. 10, 11)  Thus, the question becomes whether these demands trigger the third-party defendants' duty "to defend ... [Ohio Edison] ... against any and all claims ... asserted by any person or persons for ... property damage arising or in any manner growing out of Lessee's use of said premises." (Amended Third–Party Complaint, Exhibit D at 2).

At this juncture, one may be tempted to conclude that the third-party plaintiff has stated a claim for breach of contract.  In light of the relevant case law and the admittedly weak 12(b)(6) standard of review, plaintiffs allegations may well "constitute a statement of a claim under Rule 8(a)". *Ecclesiastical Order of the ISM of AM, Inc. v. Chasin*, 653 F.Supp. 1200, 1204 (E.D.Mich.1986), *aff'd*, 845 F.2d 113 (6th Cir.1988); 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1357 (1990).  In other words, Ohio Edison claims breach of

---

U.S.Dist. LEXIS 18424 (S.D.Ohio 1988) (Graham, J.).

**7.** The phrase "motion overruled" provided as the subsequent appellate history in the case above stands for "jurisdictional motion overruled", a decision by the Ohio Supreme Court that is the functional equivalent of the U.S. Supreme Court's denial of certiorari.

**8.** This rule is applicable where, as here, the insurer agrees to defend "against any and all

claims". (Third Party Amended Complaint, Exhibit C at 2).  *See Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 507 N.E.2d 1118 (1987); *MacLellan v. Motorists Ins. Co.*, 1990 WL 84264, *1, 1990 Ohio App. LEXIS 2506, *4 (1990), *motion overruled*, 56 Ohio St.3d 704, 564 N.E.2d 707 (1990) (*Willoughby Hills* applicable unless insurer demonstrates "that the facts underlying the complaint [in the main case] differ from the actual facts, thereby removing the action from coverage.")

the duty to defend, a duty which arises when the allegations in the main case (the Stychno complaint) "state a claim which is potentially or arguably within the policy coverage". *Willoughby Hills,* 9 Ohio St.3d at 177, 459 N.E.2d 555. The Stychno complaint seeks recovery of "response costs" necessitated by the clean up of land once owned by Ohio Edison. The third-party defendants are obligated to defend Ohio Edison against claims by persons for "property damage" arising from the use of this property. Ohio Edison claims that "response costs" are "potentially or arguably" "property damage" as that term is used in the Ohio Edison/Summit–Warren lease. In contrast, the third-party defendants argue that "hornbook insurance law" when combined with "even the most cursory reading of CERCLA" compel the conclusion that "Stychno's complaint is not an action for "property damage." (Third–Party Defendants' Motion to Dismiss, Docket # 56 at 14, 15) Thus, the issue before the court is defined.

As the third-party defendants note, this issue is "uniquely suited" for Rule 12(b)(6) analysis. (Third Party Defendants' Motion to Dismiss, Docket # 56 at 10) (*citing Goodman v. Bd. of Trustees of Communi-*

*ty College,* 498 F.Supp. 1329, 1337 (N.D.Ill. 1980) ("Where ... the plaintiff's cause of action arises out of a contract which has been attached to the complaint as an exhibit, and where such contract shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate.") *See e.g., Corabi v. CNA Insurance Companies,* 1988 U.S.Dist. LEXIS 18424 (S.D.Ohio 1988) (Graham, J.).

■ The issue before the court, whether a claim for "response costs" under CERCLA is a claim for "property damage" under the contract is apparently one of first impression in this state.[9] With minimal analysis, both parties to this motion insist that the majority of federal courts favor their position. (*See* Third–Party Defendants' Motion at 17; Third–Party Plaintiff's Opposition at 10). Were the law a democracy, these arguments may be relevant; but, of course, this is not the case. Nevertheless, it should be noted that the question of whether response costs constitute damages has divided the federal courts into two large, but apparently comparably sized camps.[10]

**9.** Indeed, there are *no* reported decisions citing Ohio's version of CERCLA, Ohio Rev.Code §§ 3745,12 and 3745.13. This court has found but one Ohio case tangentially related to the precise issue before this court. *Professional Rental, Inc. v. Shelby Ins. Co.,* 75 Ohio App.3d 365, 599 N.E.2d 423 (11th App.Dist.1991) In that case, the plaintiff sought a court declaration that the insurer had a duty to defend plaintiff following the plaintiff's receipt of a letter from the U.S. EPA notifying it that it was a "potentially responsible party" ["PRP"] for its contribution to the substances found at a Superfund site. The contractual provisions at issue provided that the insurer:

> [Would] pay all sums the insured legally must pay as damages because of bodily injury or *property damage ...*
> [and had] the duty to defend any *suit* asking for these *damages.* However, we have no duty to defend suits for bodily injury and *property damage* not covered by this policy.

*Professional Rental, Inc.,* at 369–70, 599 N.E.2d 423, 1991 Ohio App. LEXIS 5945, *7 Without addressing the question of whether the EPA sought "damages" due to "property damage", the court held that the plaintiff's receipt of the PRP notification was not the equivalent of a "suit"

under Ohio law, and therefore did not trigger the duty to defend.

Because there is no Ohio Supreme Court or Ohio appellate court decision on the precise issue at hand, this court must determine how the highest court of the state would decided this issue. *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1485 (6th Cir.1989); C. Wright, Federal Courts 373 (4th ed. 1983).

**10.** *See, e.g.,* the following cases supporting the third-party plaintiff's position: *Aetna Casualty & Surety Co., Inc. v. Pintlar Corp.,* 948 F.2d 1507, 1512 (9th Cir.1991) (interpreting Idaho law); *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.,* 944 F.2d 940, 947 (D.C.Cir. 1991) (interpreting Missouri law), *cert. denied,* — U.S. ——, 112 S.Ct. 1777, 118 L.Ed.2d 435 (1992); *New Castle County v. Hartford Accident & Indemnity Co.,* 933 F.2d 1162, 1188 (3d Cir.1991) (interpreting Delaware law); *Avondale Indus. Inc. v. Travelers Indemnity Co.,* 887 F.2d 1200, 1207 (2d Cir.1989) (interpreting New York law), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); *Port of Portland v. Water Quality Ins. Syndicate,* 796 F.2d 1188, 1194 (9th Cir.1986) (interpreting Oregon law); *Intel Corp. v. Hartford Accident & Indemnity Co.,* 692 F.Supp. 1171, 1193 (N.D.Cal.1988) (inter-

Unfortunately, the contract at issue does not define the term "claim for ... property damage". Consequently, we are left to the devices of state law. Unlike other courts, this court is not favored with a statutory definition of this term. *See, e.g., Intel Corp. v. Hartford Accident & Indemnity Co.,* 692 F.Supp. 1171, 1193 (N.D.Cal.1988). Under Ohio law, it has long been established that:

> [W]here a contractual term is not otherwise defined in the contract, and where no evidence is introduced to show the intended meaning of the term, ... [the term] ... must be read in its common ordinary meaning.

*Olmstead v. The Lumbermens Mutual Ins. Co.,* 22 Ohio St.2d 212, 259 N.E.2d 123, para. 1 and 2 of the syllabus (1970) [11]; *Royal Ins. Co., Ltd. v. Jack,* 113 Ohio St. 153, 148 N.E. 923, para. 1 of the syllabus (1925) ("In construing the [undefined term], it should be given the meaning and understanding employed by persons in the ordinary walks of life."), *overruled on other grounds, Munchik v. Casualty Co.,* 2 Ohio St.2d 303, 305, 209 N.E.2d 167 (1965) (holding that the definition given "theft" in *Jack, supra,* did not comport with "the meaning and understanding accorded by persons in the ordinary walks of life.") *See also Fidelity Co. v. Hartzell Bros.,* 109 Ohio St. 566, 569, 143 N.E. 137 (1924) ("[C]ontracts of insurance, like other con-tracts, are to be construed according to the sense and meaning of the terms which the parties have used and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense."); *Webster v. Dwelling House Ins. Co.,* 53 Ohio St. 558, 565–566, 42 N.E. 546 (1895):

> [I]t is natural to presume that they used the word in the popular sense.... If the company may stand on a strict technical construction of the words used, and hold the plaintiffs to them though they did not fully apprehend their legal effect, and ought not reasonably to have done so, it is placed in the position of tempting patrons into the mistaken belief that they have indemnity, only to find, when the trial comes, that their reliance had been upon a broken reed. A court cannot sustain such a contention.

*See, e.g., Gomolka v. State Automobile Mutual Ins. Co.,* 70 Ohio St.2d 166, 436 N.E.2d 1347 (1982); *Taulbee v. The Travelers Cos.,* 42 Ohio App.3d 209, 537 N.E.2d 670 (1987), *motion overruled,* (1987). If, however, the term is ambiguous, the language is construed against the insurer. *Suburban Community Hospital v. Lindquist,* 69 Ohio St.2d 302, 432 N.E.2d 173 (1982); *Toms v. Hartford Fire Ins. Co.,* 146 Ohio St. 39, 63 N.E.2d 909 (1945); *Taulbee v. The Travelers Cos.,* 42 Ohio App.3d 209, 537 N.E.2d 670 (1987).

---

preting California law), *aff'd in part and reversed in part,* 952 F.2d 1551 (9th Cir.1991) (affirming relevant portions); *U.S.F. & G. v. Thomas Solvent Co.,* 683 F.Supp. 1139, 1168 (W.D.Mich.1988) (interpreting Michigan law), *vacated on other grounds,* 683 F.Supp. at 1774 (W.D.Mich.1988); *Higgins Indus., Inc. v. Fireman's Fund Ins. Co.,* 730 F.Supp. 774 n. 1 (E.D.Mich.1989); *Fireman's Fund Ins. Co. v. Ex–Cell–O Corp.,* 750 F.Supp. 1340 (E.D.Mich.1990) (reserving issue pending ruling by Michigan Supreme Court).

In contrast, the following courts' decisions support the view of the third-party defendants: *A. Johnson & Co. v. Aetna Casualty & Surety Co.,* 933 F.2d 66, 69 (1st Cir.1991) (interpreting Maine law); *Continental Ins. Cos. v. Northeastern Pharmaceutical & Chem. Co.,* 842 F.2d 977, 985 (8th Cir.1988) (*en banc*) (5–3 vote interpreting Missouri law), *cert. denied,* 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988), *Cincinnati Ins. Co. v. Milliken & Co.,* 857 F.2d 979, 981 (4th Cir.1988) (interpreting Maryland law); *Mary-land Casualty Co. v. Armco, Inc.,* 822 F.2d 1348, 1352 (4th Cir.1987) (interpreting Maryland law), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988); *Hayes v. Maryland Casualty Co.,* 688 F.Supp. 1513, 1514–1515 (N.D.Fla.1988) (interpreting Florida law); *Verlan, Ltd. v. John L. Armitage & Co.,* 695 F.Supp. 950, 954–955 (N.D.Ill.1988) (interpreting Illinois law); *Travelers Ins. Co. v. Ross Elec., Inc.,* 685 F.Supp. 742, 743–45 (W.D.Wash.1988) (interpreting Washington law).

**11.** In Ohio, courts must follow the principles set forth in the syllabi of Ohio Supreme Court opinions; the syllabi, not the body of the opinion, states the law of the case. *Smith v. Klem,* 6 Ohio St.3d 16, 450 N.E.2d 1171 (1983). Ironically, this rule is not stated in the syllabus of the case cited for this proposition, but rather is found in the body of the opinion. *See DeLozier v. Sommer,* 38 Ohio St.2d 268, 271, 313 N.E.2d 386 (1974).

With this established, we turn to the term at issue, "claim for ... property damage". Our inquiry must determine whether an action for "response costs" is embraced by the term "claim for ... property damage". Response costs are costs incurred to remove and remedy the effects of improper hazardous waste disposal. *See* 42 U.S.C. §§ 9607(a)(1)–(4)(B); 9601(25)(23)(24). The costs recoverable are expansive. *See United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1500–1502 (6th Cir.1989), *cert. denied*, 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990); *United States v. Bogas*, 920 F.2d 363 (6th Cir. 1990). Indeed, it has been said "CERCLA is remedial in nature, and the court should not interpret [response costs provisions] in any way that apparently frustrates the statute's goals, in the absence of a specific congressional intent otherwise." *United States v. Distler*, 741 F.Supp. 637 (W.D.Ky. 1990). Ultimately, the goal of the response costs provisions is that "the cost of cleaning up hazardous waste sites is to be borne by those responsible for the wastes." *Bogas*, 920 F.2d at 369. In light of such language, a conclusion that a suit for response costs is essentially a claim for property damage seems, at first blush, quite apparent. Nevertheless, the third-party defendants hold a tenable and opposing view.

The basis of Summit–Warren's argument is that actions for response costs are equitable in nature, to recover for economic loss rather than for "damages" per se. *See, e.g., Continental Insurance v. Northeastern Pharmaceutical*, 842 F.2d 977, 985–86 (8th Cir.1988) *(en banc), cert. denied*, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). In so doing, they note that CERCLA provides for recovery of both "damages" and "costs of response" in different situations. *See* 42 U.S.C. § 9607(a)(4)(C).

In the case at bar, for third-party plaintiffs to state a claim, the plaintiff in the main case must make a claim for "property damage". This term can only be construed as unambiguous, and is therefore should be given its common meaning [12]. Both in common parlance and in the eyes of the law:

> A distinction ... is noted between the word "damage" employed in the singular, and the word "damages". "Damage" is defined to be the loss, injury, or deterioration caused by the negligence, design, or accident of one person, to another, in respect to the latter's person or property, whereas "damages" signifies a compensation in money for the loss or the damage. So regarded, "damage" is the occasion of "damages".

30 Ohio Jurisprudence 3d § 1 (1981). *See also* Webster's Third New Int'l Dictionary (Unabridged) 571 (1986):

> **dam-age/** dˇamij, -mej/ n -s [ME, fr. OF, fr. *dam* damage (fr. L *damnum* damage, fine) + *-age*—more at damn] **1:** loss due to injury :injury or harm to person, property, or reputation: hurt, harm <flood ˜ )> <˜ resulting from upheavals of nature> <items that may be canceled without ˜ to the essential plan> <my poor parents were afraid of social ˜ to their child—Rose Macaulay. **2** *obs* : a thing to be regretted : misfortune, disadvantage **3 damages** *pl* : the estimated reparation in money for detriment or injury sustained : compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right <bring a suit for ˜ s>, was awarded compensatory ˜ s of $4000>—compare damnum absque inuria; *see* compensatory damages, general damages, nominal damages, punitive damages, special damages **4 :** expense, cost, charge **syn** *see* injury

(emphasis in original); *See also* Black's Law Dictionary 498, 499 (3d ed. 1933) (containing nearly identical definitions). Thus, we must ascertain whether Stychno's demand for response costs from the third-party plaintiff is a claim for "injury ... to [Stychno's] ... property". 30 Ohio Juris-

---

**12.** Of course, if this term was ambiguous, it would be construed against the third-party defendants, prompting immediate denial of their motion to dismiss. *See Taublee v. The Travelers Cos.*, 42 Ohio App.3d at 211, 537 N.E.2d 670 (ambiguous terms "construed in favor of the insured and strictly against the insurer"); *See, e.g., Aetna Casualty & Surety Co., Inc. v. Pintlar Corp.*, 948 F.2d at 1513.

prudence § 1 (1981). Or, in other words, if the complaint in the main case is one for "harm to ... property." The complaint in the main case claims the third-party plaintiff disposed of hazardous waste on Stychno's property and is therefore responsible for the property's clean up costs. A conclusion that it is a claim for "harm to ... property" is inescapable. Such a conclusion is further compelled if one gives the term "the usual meaning and understanding accorded by persons in the ordinary walks of life," *Munchick v. Casualty Co.*, 2 Ohio St.2d 303, 305, 209 N.E.2d 167 (1965), or if it is "understood in [its] plain, ordinary and popular sense." *Fidelity Co.*, 109 Ohio St. at 569, 143 N.E. 137. This court finds persuasive the reasoning contained in Judge Enslen's decision on this issue:

It is clear to me that once property damage is found as a result of environmental contamination, clean-up costs should be recoverable as sums that the insured was liable to pay as a result of property damage. In this context the argument concerning the historical separation of damages and equity is not convincing and it seems to me that the insured ought to be able to rely on the common sense expectation that property damages within the meaning of the policy includes a claim which results in causing him to pay sums of money because his acts or omissions affected adversely the rights of third parties. While such claims might be characterized as seeking "equitable relief", the cleanup costs are essentially compensatory damages for injury to common property and for that reason the insurer has a duty to defend.

*U.S.F. & G. v. Thomas Solvent Co.*, 683 F.Supp. 1139, 1168, *vacated on other grounds*, 683 F.Supp. at 1174 (W.D.Mich. 1988).

Of course, if one attempts, as do the third-party defendants, to construe the contract as requiring a claim for "damages", this court would still be required to reach a similar conclusion. As noted above, the ordinary meaning of "damages" is:

the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right.

Webster's Third New Int'l Dictionary (Unabridged) 571 (1986). Of course, this definition is a remarkably succinct description of CERCLA's remedial scheme. As noted by the Ninth Circuit:

Dictionary definitions indicate that in the lexicon of the ordinary person, the plain meaning of the term "damages" would include response costs. This is so because the term "damages", in common thought, does not distinguish between equitable and nonequitable relief. Any definition of 'damages' which is grounded upon the ancient division between law and equity—such as the definition now proffered by the insurers—would hardly be an 'ordinary and accepted meaning' in the eyes of a 'reasonably prudent layperson.'

*Aetna Casualty & Surety Co., Inc. v. Pintlar Corp.*, 948 F.2d 1507, 1513 (9th Cir.1991) (citations omitted). *See also Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.*, 944 F.2d at 946–47, *cert. denied,* —— U.S. ——, 112 S.Ct. 1777, 118 L.Ed.2d 435 (1992):

[W]ith the exception of NEPACCO [13], in every case in which the operative state's rules of insurance contract interpretation required ... resort to the common and ordinary understanding of language, the word "damages" has been construed to cover reimbursement for environmental response costs incurred by a government.

.    .    .    .    .

Liability for environmental response costs. is similar to compensation placing an individual in the position that he would have been in had the injurious action not occurred. This is how "damages" is normally understood. A fine or penalty, in contrast, is not understood to

---

**13.** *Continental Insurance Cos. v. Northern Pharmaceutical & Chemical Co.*, 842 F.2d 977, 979

(8th Cir.), *cert. denied*, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988).

be dollar-for-dollar recompense. Rather, it is a pecuniary form of punishment for the commission of an act society finds repugnant and seeks to deter.

A demand for response costs is tantamount to a claim for damages, compelling denial of the third-party defendant's motion.

This conclusion is buttressed by an examination of Ohio's common law practice relating to the damage of real property. As noted above, response costs actions are essentially remedial in nature, to compensate for the cost of cleaning up improperly deposited hazardous wastes. Response costs include "the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction or secure disposition off-site of hazardous substances." In Ohio, when one's real property is damaged by the negligence or design of another, the owner is entitled to a recovery of *damages* in the following manner:

> [I]f the injury is of a permanent or irreparable nature, the difference in the market value of the property as a whole … before and after the injury. *If restoration can be made, the measure of damages is the reasonable cost of restoration … unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury.*

*Ohio Collieries Co. v. Cocke,* 107 Ohio St. 238, 140 N.E. 356 at syllabus para. 5 (1923). More recently restated, "this rule is that damages include compensation either for the diminution in value of the land as a whole, or at the owner's option, 'the cost of restoration that … may be reasonable incurred.'" *Denoyer v. Lamb,* 22 Ohio App.3d 136, 138–139, 490 N.E.2d 615 (1984) (*citing* 4 Restatement (Second) of Torts § 929 cmt. b (1979)). The marked resemblance between these remedial schemes is further persuades this court that the Ohio Supreme Court would conclude that Stychno's complaint constitutes a claim for property damages. Consequently, this portion

of the third-party defendants' motion must also be denied.

### CONCLUSION

The legal arguments proffered by the third-party defendants in support of their motion for dismissal, while tenable, hinge, in this court's opinion, upon unacceptable decisions of other courts. Ohio Edison has stated claims for which third-party defendants may be held liable under both CERCLA and the contract to which they are signatories. Accordingly, the third-party defendants' motion to dismiss, Docket # 56, is hereby DENIED.

IT IS SO ORDERED.