[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Sherwin-Williams Co. v. Certain Underwriters at Lloyd's London*, Slip Opinion No. 2024-Ohio-5773.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**SLIP OPINION NO. 2024-OHIO-5773**

**SHERWIN-WILLIAMS COMPANY, APPELLEE, *v.* CERTAIN UNDERWRITERS AT LLOYD'S LONDON ET AL., APPELLANTS.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Sherwin-Williams Co. v. Certain Underwriters at Lloyd's London*, Slip Opinion No. 2024-Ohio-5773.]**

*Insurance—Insurers of paint company that marketed and sold lead paint are not obligated to indemnify paint company for payments that paint company made into abatement fund to mitigate hazards of lead paint—Because abatement-fund payment was made to prevent future harm rather than compensate for past harm, payment was not "damages" covered under insurance contracts—Court of appeals' judgment reversed and trial court's grant of summary judgment in favor of insurers reinstated.*

(No. 2023-0255—Submitted October 24, 2023—Decided December 10, 2024.)

APPEAL from the Court of Appeals for Cuyahoga County,
No. 110187, 2022-Ohio-3031.

————————————————

DETERS, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, and BRUNNER, JJ., joined. STEWART, J., concurred, with an opinion.

**DETERS, J.**

{¶ 1} This case is about whether a paint company's insurers must indemnify it for money the company was ordered to pay into an abatement fund to mitigate the hazards of lead paint. The trial court determined that the insurers did not have to indemnify the paint company, but the court of appeals reversed. We conclude that because the abatement-fund payment was ordered to prevent future harm to children's health from lead paint, the payment to the fund did not constitute "damages" under the insurance contracts. The Eighth District Court of Appeals erred when it concluded that the insurers were obligated to indemnify the paint company. We therefore reverse the judgment of the court of appeals and reinstate the trial court's entry of summary judgment in favor of the insurers.

## I. BACKGROUND

### A. The California Lawsuit

{¶ 2} In 2000, Santa Clara County, California, sued Sherwin-Williams and other paint companies. The initial complaint alleged claims for strict liability, negligence, fraud and concealment, unjust enrichment, indemnity, and unfair business practices related to the companies' role in selling and promoting the use of lead-based paint. *See Santa Clara Cty. v. Atlantic Richfield Co.*, 137 Cal.App.4th 292, 299 (2006). Other California governmental entities joined Santa Clara County ("the governmental entities") in the lawsuit, and ultimately, the lawsuit moved forward on only one claim—a public-nuisance claim "on behalf of the People of

the State of California."[1]   In the fourth amended complaint, the governmental entities alleged:

> As a direct and proximate result of [the paint companies'] conduct, large numbers of people throughout the State of California, and particularly children, have been exposed and/or are being exposed and/or will be exposed to [l]ead in, on and around the contaminated homes, buildings, and other property throughout the State of California, thereby affecting the health, safety, and welfare of each of those children.

{¶ 3} In 2013, the case was tried to the Superior Court of California in Santa Clara County.   At the conclusion of the trial, the trial court held that Sherwin-Williams and two other paint companies, NL Industries and ConAgra, ("the paint companies") had created a public nuisance as claimed by the governmental entities, and it ordered the companies to pay jointly and severally $1.15 billion into an abatement fund to be administered by the State of California.  *People v. Atlantic Richfield Co.*, 2014 WL 1385823, *61 (Cal.Super.Ct. Mar. 26, 2014).   The California trial court explained that the abatement plan would require:

- Testing of interior surfaces in homes to identify both the presence of lead-based paint and the presence of lead-based paint hazards;

---

1. For purposes of the California lawsuit, "[t]he People" were "residents of the counties of Santa Clara, Alameda, Los Angeles, Monterey, San Mateo, Solano, and Ventura Counties and the cities of Oakland, San Diego, and San Francisco." *People v. Atlantic Richfield Co.*, 2014 WL 1385823, *2 (Cal.Super.Ct. Mar. 26, 2014).

- Remediation of lead-based paint on friction surfaces (including windows, doors, and floors) by either replacement of the building component or by encapsulation or enclosure of the lead-paint;

- Remediation of lead-based paint hazards in excess of actionable levels on all other surfaces through paint stabilization (as opposed to paint removal, enclosure or encapsulation);

- Dust removal, covering of bare contaminated soil, proper disposal of waste, post-hazard control cleanup and dust testing, and occupant and worker protection;

- Repair of building deficiencies that might cause the corrective measures to fail (e.g. water leaks) to ensure durability of the lead hazard control measures; and

- Education of families and homeowners on lead poisoning prevention and paint-stabilization techniques to remediate lead based paint hazards on non-friction surfaces.

*Id*. at *56-57.

{¶ 4} The paint companies were to deposit payments into a fund for disbursement by the State of California's Childhood Lead Poisoning Prevention Branch. *Id*. at *61. The governmental entities would then apply for grants from the fund. *Id*. at *62. Under the abatement plan, the governmental entities had various obligations—for example, establishing the priority of the inspection and lead-hazard-control work; conducting workforce development, public-education campaigns; designing hazard-control plans; reviewing payments to hazard-control contractors; and reviewing workforce development. *Id*. at *57. According to the

4

court's order, the plan would last for four years and, after that period, any remaining funds would be returned to the paint companies. *Id*. at *62.

{¶ 5} The paint companies appealed to the California Sixth District Court of Appeal. That court affirmed the lower court's conclusion that the paint companies had created a public nuisance by their promotion of lead-based paint. *People v. ConAgra Grocery Prods. Co.*, 17 Cal.App.5th 51, 66, 91-104 (2017). But the appellate court held that causation had not been established with respect to houses built after 1950. *Id.* at 66, 105. The appellate court therefore remanded the case so that the trial court could "recalculate the amount of the abatement fund to limit it to the amount necessary to cover the cost of remediating pre-1951 homes." *Id*. at 169. The California Supreme Court denied the paint companies' petitions for review of the court of appeal's decision. 2018 Cal. LEXIS 1277 (Feb. 14, 2018), *cert. denied*, __ U.S. __, 139 S.Ct. 377 (2018). On remand, the Santa Clara County Superior Court reduced the amount to be paid into the abatement fund to $409 million. *See Certain Underwriters at Lloyd's London v. ConAgra Grocery Prods. Co., L.L.C.*, 77 Cal.App.5th 729, 737 (2022). Ultimately, in 2019, the parties to the California lawsuit came to a settlement by which each of the paint companies would pay $101,666,667 into the abatement fund. *See id.*

### B. Sherwin-Williams's case in Ohio

{¶ 6} In 2006, Sherwin-Williams filed a lawsuit in the Cuyahoga County Court of Common Pleas seeking, among other things, a declaration of the coverage obligations of its insurers with respect to a similar public-nuisance lawsuit pending in Rhode Island.[2] In 2008, after the Rhode Island Supreme Court entered judgment in favor of Sherwin-Williams in that lawsuit, Sherwin-Williams and all of the

---

2. Sherwin-Williams filed its lawsuit in Ohio based on its contention that the insurance companies regularly did business in Ohio and had contracted to insure risks of Sherwin-Williams in Ohio. *See* R.C. 2307.382(A)(1) and (9).

defendants jointly moved to stay the Cuyahoga County lawsuit. The trial court ordered a stay.

{¶ 7} After the California Supreme Court and United States Supreme Court refused to hear Sherwin-Williams's appeal in the California lawsuit and after the Santa Clara County Superior Court entered its order reducing the total amount to be paid to the abatement fund to $409 million, Sherwin-Williams moved to lift the stay in January 2019. The common pleas court granted the motion the following month. Sherwin-Williams then filed an amended complaint against "Certain Underwriters at Lloyd's, London, Certain London Market Companies, and Certain Domestic Insurers", seeking indemnification for the California lawsuit and any other similar lead-paint claims.[3]

{¶ 8} Nearly all of the insurers joined a motion for summary judgment arguing that they were not required to indemnify Sherwin-Williams under the terms of their various insurance policies.[4] For proceedings before the trial court, Sherwin-Williams and the insurers stipulated to exemplar contracts. The summary-judgment motion argued that the policies provide no coverage for the lead-paint

---

3. The named defendants are Certain Underwriters at Lloyds, London, and Certain London Market Companies; Ace American Insurance Company; Allianz Global Risks US Insurance Company; Allstate Insurance Company; American Alternative Insurance Company; American Casualty Company of Reading, Pennsylvania; American Guarantee & Liability Insurance Company; American Home Assurance Company; American Zurich Insurance Company; Berkshire Hathaway Direct Insurance Company; Central National Insurance Company of Omaha; Century Indemnity Company; Columbia Casualty Company; Continental Casualty Companies; Continental Insurance Company; Employers Mutual Casualty Company; Executive Risk Indemnity, Inc.; Federal Insurance Company; Fireman's Fund Insurance Company; First State Insurance Company; Government Employees Insurance Company; Great American Insurance Company; Gulf Insurance Company; Harbor Insurance Company; Insurance Company of the State of Pennsylvania; Lexington Insurance Company; Mount McKinley Insurance Company; National Surety Corporation; National Union Fire Insurance Company of Pittsburgh, Pa.; North River Insurance Company; Nutmeg Insurance Company; OneBeacon Insurance Company; Royal Indemnity Company; Steadfast Insurance Company; St. Paul Fire & Marine Insurance Company; TIG Insurance Company; Travelers Casualty & Surety Company; Twin City Fire Insurance Company; United States Fire Insurance Company; Westchester Fire Insurance Company; and Westport Insurance Corporation.

4. Of the named defendants, it appears that several insurance companies did not join the motion for summary judgment.

claims, because (1) the policies only provide coverage for harm that was neither expected nor intended, and Sherwin-Williams had *intentionally* promoted its lead-based paint; (2) the policies only provide coverage for damages and expenses, and no damages or expenses were awarded by the California trial court; and (3) the policies only cover damages "for," "because of," or "on account of" "property damage" or "bodily injury," and Sherwin-Williams had not been held liable on that basis.

{¶ 9} Sherwin-Williams, for its part, filed a motion for partial summary judgment against National Union Fire Insurance Company of Pittsburgh, Pa., choosing that company as a single policy to respond first under this court's holding in *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 2002-Ohio-2842, ¶ 12 ("[The insured] should be permitted to choose, from the pool of triggered primary policies, a single primary policy against which it desires to make a claim. In the event that this policy does not cover [the insured's] entire claim, then [the insured] may pursue coverage under other primary or excess insurance policies.").

{¶ 10} The common pleas court granted summary judgment to the insurers. Its decision hinged on language from the California Sixth District Court of Appeal regarding whether payment to an abatement fund was a damages award:

> "The abatement fund was not a 'thinly-disguised' damages award. The distinction between an abatement order and a damages award is stark. An abatement order is an equitable remedy, while damages are a legal remedy. An equitable remedy's sole purpose is to eliminate the hazard that is causing prospective harm to the plaintiff. An equitable remedy provides no compensation to a plaintiff for prior harm. Damages, on the other hand, are directed at compensating the plaintiff for prior accrued harm that has resulted from the defendant's wrongful conduct."

Cuyahoga C.P. No. CV-06-585786, 3 (Dec. 4, 2020), quoting *ConAgra Grocery Prods.*, 17 Cal.App.5th at 132-133.  Although the common pleas court found the California court's determination to be "counterintuitive and illogical," the court considered itself bound by that determination.  *Id*. at 7.  Thus, it concluded that there were no damages for purposes of reimbursement under the insurance policies. *Id*.  And because the recovery for "certain expenses" under some of the policies was triggered only by a payment of damages, there were no expenses under those policies.  *Id*.

{¶ 11} Sherwin-Williams appealed to the Eighth District Court of Appeals, which reversed the trial court's judgment.  2022-Ohio-3031, ¶ 94 (8th Dist.).  The Eighth District relied largely on the decisions of a New York trial court and appellate court in a similar case involving liability of a paint company stemming from the California litigation and abatement-fund settlement.  *See Certain Underwriters at Lloyd's London v. NL Industries, Inc.*, N.Y. Sup.Ct., New York Cty., No. 650103/2014, 2020 N.Y. Misc LEXIS 10905 (Dec. 29, 2020) ("*NL I*"); *Certain Underwriters at Lloyd's London v. NL Industries, Inc.*, 164 N.Y.S.3d 607 (N.Y.App.Div. 2022) ("*NL II*").  In that case, the New York courts determined that the insurers of NL Industries were obligated to indemnify the company for the California lawsuit.

{¶ 12} Here, contrary to the trial court's reasoning, the Eighth District concluded that it was not bound by the California appellate court's statement regarding whether payment into the abatement fund constituted "damages" under the policies, because that issue had not been litigated in the California lawsuit. 2022-Ohio-3031 at ¶ 52 (8th Dist.).  Instead, the Eighth District considered the issue and was persuaded by the New York courts' conclusion in *NL I* and *NL II* that the payment into the abatement fund constituted "damages" under the insurance policies.  *Id.* at ¶ 53-67.  The Eighth District determined that "the Abatement Fund

essentially serves the purpose of reimbursing the government's costs in responding to the lead paint hazard." *Id*. at ¶ 67. The court continued, "Indeed, the Abatement Fund was not strictly intended to prevent harm but was monies to be paid to the government to compensate for money depleted by its ongoing efforts to remediate the longstanding contamination of houses and buildings by lead paint in California." *Id*. Thus, according to the Eighth District, Sherwin-Williams's payment into the abatement fund qualified as damages under the policies. *Id.*

{¶ 13} The Eighth District also concluded that the trial court had correctly determined that coverage was not excluded because of any "intentional and expected acts" of Sherwin-Williams, *id.* at ¶ 79, or because the liability was not imposed "because of" bodily injury or property damage, *id.* at ¶ 90.

{¶ 14} The insurers filed a motion for reconsideration and reconsideration en banc following our decision in *Acuity v. Masters Pharmaceutical, Inc.*, 2022-Ohio-3092, arguing that in *Acuity*, we "rejected the basis for the [Eighth District's] holding that the Santa Clara abatement fund was damages because of property damage or bodily injury." The Eighth District denied the motion.

{¶ 15} The insurers' appealed, and we accepted jurisdiction over three propositions of law:

> Proposition of Law 1: Under *Acuity*, [commercial general liability ("CGL")] policies cover an insured's liability for "damages" "because of" "bodily injury" or "property damage" to particular individuals or properties. They do not cover liability imposed to abate societal harm and prevent future injuries.

> Proposition of Law 2: When an insured is "substantially certain" or has "actual knowledge" that its conduct will result in harm, coverage is unavailable under both CGL "expected or intended" policy language and Ohio public policy.

Proposition of Law 3: The term "damages" in a CGL policy is payment for loss or injury sustained by a person, and it does not include monetary payments that do not compensate anyone for loss or injury.

*See* 2023-Ohio-1507.

{¶ 16} As will be discussed below, the ultimate question in this appeal is resolved by determining whether the payment to the abatement fund constituted "damages" under the policies, so we confine our discussion to the insurers' third proposition of law.

## II.  ANALYSIS

{¶ 17} "'An insurance policy is a contract whose interpretation is a matter of law.' *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus.  Therefore, we apply the de novo standard of review when we interpret insurance contracts." *Krewina v. United Specialty Ins. Co.*, 2023-Ohio-2343, ¶ 17.

### A.  The policies cover compensation for past harms,
### not for eliminating future harms

{¶ 18} Throughout the proceedings, the parties have stipulated to exemplar language from nine insurance policies issued to Sherwin-Williams.  Although the policies employ different phrasing, each one contains some version of the language used in a policy between Lloyd's and Sherwin-Williams for the period of 1964-1967:

Underwriters hereby agree . . . to indemnify [Sherwin-Williams] for all sums which [Sherwin-Williams] shall be obligated to pay by reason of the liability

. . .

for damages on account of:

(1) Personal Injuries, including death at any time resulting therefrom,

(2) Property Damage, including the loss of use thereof

. . . .[5]

Most of the policies provide definitions of terms such as "personal injuries" or "property damage," but none defines "damages."

{¶ 19} "We interpret insurance contracts with the same rules as other written contracts. That means that for an insurance contract, just like any other contract, a court has an obligation to give plain language its ordinary meaning and to refrain from rewriting the contractual agreement of the parties." (Cleaned up.) *Acuity v. Progressive Specialty Ins. Co.*, 2023-Ohio-3780, ¶ 11.

{¶ 20} Here, the parties don't dispute the definition of "damages." Instead, they disagree on how that definition applies to the facts of this case. The parties point to the same definition of "damages" in their respective briefs: "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury," *Black's Law Dictionary* (8th Ed. 2004). Another definition is "the estimated

_____

5. Other agreements provide that Sherwin-Williams will be indemnified "for damages" for "bodily injuries" or "for damages on account of any claim made against [Sherwin-Williams] as respects damage to or destruction of property"; for "all sums which [Sherwin-Williams] shall become legally obligated to pay as damages because of: bodily injury or property damage"; for "those sums that [Sherwin-Williams] pays as costs, expenses, or damages because of 'bodily injury' or 'property damage'"; "for any and all sums which [Sherwin-Williams] shall by Law become liable to pay and shall pay . . . as damages for bodily injuries . . . [or] for damage to or destruction of property"; "[f]or damages and expenses . . . because of personal injury . . . [or] [f]or damages and expenses . . . because of injury to or destruction of tangible property"; "for damages on account of . . . [p]ersonal [i]njuries . . . [or] [p]roperty [d]amage"; "for damages, direct or consequential and expenses on account of . . . [p]ersonal [i]njuries . . . [or] [p]roperty [d]amage"; and for "that portion . . ., which [Sherwin-Williams] shall become legally obligated to pay as damages for liability imposed . . . because of . . . personal injury [or] property damage."

reparation in money for detriment or injury sustained." *Webster's Third New International Dictionary* (2002).

{¶ 21} The insurers argue that the payment Sherwin-Williams was ordered to make to the abatement fund "did not and could not compensate anyone for a loss or injury." Instead, according to the insurers, the abatement fund was to provide prospective relief—to prevent children from being poisoned by lead. In response, Sherwin-Williams contends that the insurers lean too heavily on California public-nuisance law to answer an Ohio question of law and that "all parties agree that the meaning of 'damages' in the Policies is a question of *Ohio insurance law* and the *parties' intent*." (Emphasis in original.) In Sherwin-Williams's view, the abatement fund was established to compensate for a past harm—the presence of lead paint in residences built before 1951. We conclude that the insurers have the better argument. As we explain below, the abatement fund established by the California trial court did not compensate the governmental entities for past loss or injury; it was designed to prospectively prevent further harm related to lead poisoning.

**B. The California court's order was not to compensate for bodily harm**

{¶ 22} California law provides three types of remedies for public nuisances: "[i]ndictment or information," "[a] civil action," or "[a]batement." Cal.Civ.Code 3491. In their fourth amended complaint in the California lawsuit, the governmental entities sought only abatement as a remedy for the paint companies' creation of a public nuisance. "Abatement" is "[t]he act of eliminating or nullifying." *Black's*. Unlike damages, which are designed to compensate for a past injury, an abatement remedy looks to prevent future harm.

{¶ 23} This distinction is borne out by the California trial court's March 26, 2014 order. The court made clear that the purpose of the abatement plan was to prevent or, at the very least, mitigate the future risk of harm to children. The court crafted the plan to address the recognition that children were at the greatest risk to

suffer from the effects of lead poisoning. Thus, "[i]nstitutional group quarters, including correctional facilities, nursing homes, dormitories, non-family military housing (e.g. barracks), mental health psychiatric rehabilitation residences, alcohol/detox living facilities, supervised apartment living quarters for youths over 16, schools, and non-home based day care centers" were excluded from the abatement plan. *Atlantic Richfield Co.*, 2014 WL 1385823, at *56.

{¶ 24} The specifics of the plan looked toward addressing future risks of lead poisoning, rather than compensating for past injury. Under the plan, property owners would be screened to see if their property qualified for inspection and subsequent services. *Id.* at *57. Educational outreach was also included. *Id.* The court established "Priority Groups" to determine the order in which properties should be addressed under the plan. *Id.* at *58. Priority Group 1 included properties housing children with already elevated blood-lead levels as well as homes "with a history of repeated, multiple poisonings occupied by a young child who has not (yet) developed an elevated blood level." *Id.* Priority Group 2 included "[p]roperties with lower lead paint concentrations," "[p]roperties with no history of lead poisoning," and "vacant housing units that could one day be occupied by children." *Id.* In short, the plan, as laid out by the California trial court, was to eliminate future harm, not compensate past injuries.

{¶ 25} The Eighth District mistakenly determined that "the Abatement Fund was not strictly intended to prevent harm but was monies to be paid to the government to compensate for money depleted by its ongoing efforts to remediate the longstanding contamination of houses and buildings by lead paint in California." 2022-Ohio-3031 at ¶ 67 (8th Dist.). The primary source of support for the Eighth District's determination was the New York courts' conclusion that "[b]ecause the Abatement Fund was not strictly intended to prevent harm but instead directed toward repaying monies depleted by the government's ongoing efforts to remediate the longstanding contamination of houses and buildings by lead

paint in California, . . . the Abatement Fund qualified as damages under the applicable policies." *Id*. at ¶ 65, citing *NL I*, 2020 N.Y. Misc. LEXIS 10905, at *42. However, while the California trial court noted that "[t]he [governmental entities] lack the resources to force homeowners to remove all lead paint from homes in their jurisdictions," *Atlantic Richfield Co*., 2014 WL 1385823, at *56, there is no indication that any part of the abatement fund was used to pay back the governmental entities for work already done. Moreover, the Eighth District's conclusion is belied by the following statement of the California Sixth District Court of Appeal:

> Here, plaintiff sought the equitable remedy of abatement for the nuisance because the hazard created by defendants was continuing to cause harm to children, and that harm could be prevented only by removing the hazard. Plaintiff did not seek to recover for any prior accrued harm nor did it seek compensation of any kind. The deposits that the trial court required defendants to make into the abatement account would be utilized not to recompense anyone for accrued harm but solely to pay for the prospective removal of the hazards defendants had created.

*ConAgra Grocery Prods.*, 17 Cal.App.5th at 133.

{¶ 26} Sherwin-Williams urges this court to disregard the California appellate court's analysis as we address whether, under Ohio law, "damages" include payments into an abatement fund. But while California courts hold no sway over resolution of Ohio questions of law, the order to pay into the abatement fund was not made in a vacuum. The circumstances surrounding the California courts' decisions are useful in answering whether Sherwin-Williams's payment constituted damages under the insurance contracts. And we conclude that the answer to that

question is that the purpose of the payment into the abatement fund was to prevent future harm to the children represented by the California governmental entities, not to compensate the governmental entities for past injury.

### C. The California court order did not compensate for past physical damage

{¶ 27} The determination whether the order to pay into the abatement fund was to compensate for physical damage is easily resolved. Sherwin-Williams argues that because the paint companies were held liable for the nuisance created by lead paint in residences built before 1951, the purpose of its payment to the abatement fund was to compensate for past property damage.

{¶ 28} Although the exact phrasing differs, the policies use a similar definition for "property damage," e.g., "loss of or direct damage to or destruction of tangible property."[6] But here, there is no indication that lead paint causes physical damage to property. *See Mastellone v. Lightning Rod Mut. Ins. Co.*, 2008-Ohio-311, ¶ 61 (8th Dist.) (construing "physical injury" to mean "harm to the property that adversely affects the structural integrity of the house").

{¶ 29} Moreover, as explained by the California appellate court, the California trial court did not order the payment to fix any damage to buildings, because the governmental entities never alleged that buildings had suffered physical injury; rather the governmental entities had

---

6. Other definitions for "property damage" from the exemplar policies include "physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or . . . loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period"; "Physical injury to tangible property, including all resulting loss of use of that property . . . or [l]oss of use of tangible property that is not physically injured"; "physical injury to or destruction of tangible property, which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or . . . loss of use of tangible property, which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

adequately alleged that the presence of deteriorated lead paint poses an unreasonable danger to human beings, [but] they . . . made no allegations that the deteriorated lead paint even threatens *the buildings themselves* with physical injury. They ha[d] not alleged that deteriorated lead paint causes the walls or floors of the structure to themselves deteriorate or in any other way causes damage to the physical components of plaintiffs' buildings other than the lead paint.

(Emphasis in original.) *Atlantic Richfield Co.*, 137 Cal.App.4th at 325. The court clarified that "[w]hile a human being who had suffered lead poisoning as a result of exposure to deteriorating lead paint in plaintiffs' buildings might have a viable negligence or strict liability cause of action . . ., plaintiffs, as the owners of structures simply containing deteriorated lead paint, do not." *Id.*

{¶ 30} In its merit brief, Sherwin-Williams, quoting *Stychno v. Ohio Edison Co.*, 806 F.Supp. 663, 674 (N.D. Ohio 1992), protests that payments "'to remove and remedy the effects of improper hazardous [substances]' " have been considered "damages" by other courts. (Bracketed text in original.) However, setting aside the fact that we are not bound by any of the holdings in the cases Sherwin-Williams cites in support of this argument, we find those cases distinguishable from this matter.

{¶ 31} In *Stychno*, a federal trial court considered whether "response costs" under 42 U.S.C. 9601 et seq. (i.e., CERCLA) were "damages" under a lease agreement, such that a lessee was bound to defend a lessor for the cleanup of hazardous waste the lessee allegedly disposed on the lessor's property. *Id*. at 665-666. Even if response costs were equitable in nature, the court concluded that they constituted "damages." *Id.* at 674-676. The response costs were sought to remediate the harm done to the property by the improper disposal of hazardous

waste. *Id.* at 674. Similarly, the Ohio Eleventh District Court of Appeals concluded that environmental cleanup costs ordered to remedy damage done when oil was discharged into a nearby pond were "damages" under an insurance policy. *Sanborn Plastics Corp. v. St. Paul Fire & Marine Ins. Co.*, 84 Ohio App.3d 302, 315-316 (11th Dist. 1993). And in *Cincinnati v. Metro. Design & Dev., L.L.C.*, 2019-Ohio-364, ¶ 1, 16-18 (1st Dist.), the First District Court of Appeals determined that an order directing a construction company to repair and stabilize land damaged during a landslide caused by the company constituted "damages" under an insurance contract, even though the order was made in a public-nuisance suit. These three cases share a common thread that make them different from the case before us— they all involve remedies sought to fix damage to property. As discussed above, the abatement payment was not ordered to compensate for past physical damage to properties in the governmental entities' jurisdictions.

### III. CONCLUSION

{¶ 32} The insurance contracts between Sherwin-Williams and its insurers required the insurers to indemnify Sherwin-Williams for all sums paid for "damages." Because Sherwin-Williams's payment to the abatement fund was not to compensate for past harm but, rather, to eliminate future harm, the payment was not damages under the contracts. The judgment of the Eighth District Court of Appeals is reversed, and the trial court's judgment is reinstated.

Judgment reversed
and trial court's judgment reinstated.

_____

**STEWART, J., concurring.**

{¶ 33} Although the term "damages" is not defined in the insurance contracts at issue in this case, I agree with the majority opinion's determination that "damages" in the insurance contracts does not include the cost of abatement of the public nuisance that the hazards of lead paint in homes have caused and continue

to cause. The parties to this action agree that the term "damages" involves compensation for loss or injury. But as I explained in *In re Natl. Prescription Opiate Litigation*, 2024-Ohio-5744, ¶ 38-41 (Stewart, J., concurring in part and dissenting in part), money awarded by a court to abate an ongoing nuisance is generally not compensatory in nature but rather serves to remediate an existing harm.

**{¶ 34}** The parties in the present action are sophisticated business entities. As such, they had the power to define terms within their insurance contracts to meet their specific needs and intentions. In this case, the parties chose not to define the term "damages" and have thus left it up to the courts to define it for them based on the ordinary meaning of the term, *see Krewina v. United Specialty Ins. Co.*, 2023-Ohio-2343, ¶ 25. Because the ordinary meaning of the term requires compensation for actual injury or loss, but not money spent to prevent future harm, I agree with the majority opinion's determination that Sherwin-Williams's payment into the abatement fund did not constitute damages entitling the company to be indemnified by its insurers.

———————————

Jones Day, Leon F. DeJulius, Mark J. Andreini, Amanda R. Parker, and Anderson T. Bailey; and Hilow & Spellacy and James R. Wooley, for appellee.

McCarthy, Lebit, Crystal & Liffman Co., L.P.A., David A. Schaefer, and Nicholas R. Oleski; and Zuckerman Spaeder L.L.P., Carl S. Kravitz, Jason M. Knott, and Nicholas M. DiCarlo, for appellants Certain Underwriters at Lloyd's, London; World Marine and General Insurance Corporation Ltd.; World Auxiliary Insurance Company Ltd.; The Victory Insurance Company Ltd.; New London Reinsurance Company Ltd.; Scottish Lion Insurance Company Ltd.; Winterthur Swiss Insurance Company; Yasuda Fire & Marine Insurance Company (UK) Ltd.; Yasuda, UK; Government Employees Insurance Company; and Berkshire

Hathaway Direct Insurance Company, f.k.a. American Centennial Insurance Company.

Weston Hurd, L.L.P., and Gary W. Johnson; Aronberg Goldgehn Davis & Garmisa, Mitchell S. Goldgehn, and Daniel J. Berkowitz, for appellant Allstate Insurance Company.

Reminger Co., L.P.A., Clifford C. Masch, and Brianna M. Prislipsky; and Dentons US, L.L.P., Keith Moskowitz, and Shannon Y. Shin, for appellants American Casualty Company of Reading Pennsylvania; Columbia Casualty Company; Continental Casualty Companies; and The Continental Insurance Company.

Roetzel & Andress, L.P.A., Ronald B. Lee, and Laura M. Faust; and Chaffetz Lindsey, L.L.P., Charles J. Scibetta, and Ted DeBonis, for appellants American Home Assurance Company; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; and The Insurance Company of the State of Pennsylvania.

Seeley, Savidge, Ebert & Gourash Co., L.P.A., Daniel F. Gourash, and Robert D. Anderle; and O'Melveny & Myers, L.L.P., and Jonathan D. Hacker, for appellants Century Indemnity Company; Westchester Fire Insurance Company; and Federal Insurance Company.

Kohrman, Jackson & Krantz, L.L.P., and Maribeth Meluch; and Mendes & Mount, L.L.P., and Matthew B. Anderson, for appellants Certain London Market Companies; Fidelidade Insurance Co. of Lisbon; Guildhall Insurance Co. Ltd.; Helvetia-Accident Swiss Insurance Co.; London & Edinburgh Per HUA Pool and Per Tower X; National Casualty Co.; National Casualty Co. of America Ltd.; River Thames Insurance Co. Ltd.; The Royal Scottish Insurance Co. Ltd.; Southern Insurance Co. Ltd.; Swiss National Insurance Co. Ltd.; Swiss Re International; Terra Nova Insurance Co. Ltd.; Trent Insurance Co. Ltd.; and Cavello Bay Reinsurance Ltd.

Willman & Silvaggio, and Anna M. Sosso, for appellant Employers Mutual Casualty Company.

McCarthy, Lebit, Crystal & Liffman Co., L.P.A., and David A. Schaefer; and Rivkin Radler, Lawrence A. Levy, and Michael Kotula, for appellants National Surety Corporation; Allianz Global Risks US Insurance Company, f.k.a. Allianz Insurance Company; and American Insurance Company.

Cavitch Familo & Durkin, and Gregory E. O'Brien; and Ruggeri Parks Weinberg, L.L.P., James P. Ruggeri, Joshua D. Weinberg, and Joshua P. Mayer, for appellants First State Insurance Company; Nutmeg Insurance Company; and Twin City Fire Insurance Company.

Burns White, L.L.C., and Kevin C. Alexandersen, for appellant Great American Insurance Co.

Weston Hurd, L.L.P., and Gary W. Johnson, for appellant American Alternative Insurance Corporation.

Weston Hurd, L.L.P., and Gary W. Johnson; and Crowell & Moring, L.L.P., and Laura A. Foggan, for appellants North River Insurance Company; TIG Insurance Company; Mount McKinley Insurance Co.; and United States Fire Insurance Co.

Sutter O'Connell Co. and Matthew C. O'Connell, for appellant Royal Indemnity Company.

Roetzel & Andress, L.P.A., Ronald B. Lee, Laura M. Faust, and Phillip M. Sarnowski; and Simpson Thacher & Bartlett, L.L.P., and Bryce L. Friedman, for appellants Travelers Casualty and Surety Company; St. Paul Fire & Marine Insurance Company; and Gulf Insurance Company.

Janik, L.L.P., and Crystal L. Maluchnik; and Skarzynski Marick & Black, L.L.P., and James H. Kallianis Jr., for appellant Zurich American Insurance Company.

Roetzel & Andress, L.P.A., Emily K. Anglewicz, and Bradley L. Snyder; and Walker Wilcox Matousek, L.L.P., Alla Cherkassky Galati, and Arthur J. McColgan, for appellant Westport Insurance Corporation, f.k.a. Employers Reinsurance Corporation.

Rutter & Russin, L.L.C., Robert P. Rutter, and Robert A. Rutter, urging affirmance on behalf of amicus curiae United Policyholders.

McCarter & English, L.L.P., Sheila Kles, Sherilyn Pastor, and Jennifer Black Strutt, urging affirmance on behalf of amici curiae Product Liability Advisory Council, Inc.; and the National Association of Manufacturers.

Calfee, Halter & Griswold, L.L.P., Matthew A. Chiricosta, K. James Sullivan, and Robert F. Sohm, urging affirmance on behalf of amici curiae The Ohio Manufacturers' Association; Avient Corporation; Cleveland-Cliffs, Inc.; Eaton Corporation; GOJO Industries, Inc.; The Goodyear Tire & Rubber Company; Greif, Inc.; The Lincoln Electric Company; Materion Corporation; TimkenSteel Corporation; and Worthington Industries, Inc.

Collins Roche Utley & Garner, and Richard M. Garner, urging reversal on behalf of amicus curiae The Ohio Insurance Institute.

Plunkett Cooney, and Patrick E. Winters, urging reversal on behalf of amici curiae American Property Casualty Insurance Association; Complex Insurance Claims Litigation Association; and National Association of Mutual Insurance Companies.

―――――――――――